No. 22-2275

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## CHAMBER OF COMMERCE OF THE
## UNITED STATES OF AMERICA, et al.,

*Plaintiffs-Appellants*,

**v.**

## BROOKE LIERMAN,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the District of Maryland
(Lydia Kay Griggsby, District Judge)

_____

## BRIEF OF APPELLEE

_____

ANTHONY G. BROWN
Attorney General of Maryland

JULIA DOYLE BERNHARDT
STEVEN M. SULLIVAN
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jbernhardt@oag.state.md.us
(410) 576-7291
(410) 576-6955 (facsimile)

February 23, 2023                    Attorneys for Appellee

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __22-2275__      Caption: __Chamber of Commerce of the United States, et al. v. Brooke Lierman__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Brooke Lierman, Comptroller of the State of Maryland__
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven M. Sullivan                    Date:    February 23, 2023

Counsel for: Appellee

[Print to PDF for Filing]    [Reset Form]

**TABLE OF CONTENTS**

Page

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED FOR REVIEW ....................................................2

STATEMENT OF THE CASE ...............................................................3

    Procedural Background .................................................................3

    Factual Background ......................................................................5

        Maryland's Digital Ad Tax Act ...........................................5

        Statutory Remedy for Contesting a Tax Liability .................6

        Allegations in the Amended Complaint ................................7

SUMMARY OF ARGUMENT................................................................9

ARGUMENT .....................................................................................12

I.     THE STANDARD OF REVIEW IS DE NOVO FOR DISMISSAL UNDER THE
       TAX INJUNCTION ACT AND ABUSE OF DISCRETION FOR THE DISTRICT
       COURT'S DECISION TO WITHHOLD DECLARATORY AND INJUNCTIVE
       RELIEF, BUT THE COURT DOES NOT REVIEW THE MERITS.............................12

II.    THE TAX INJUNCTION ACT BARS THIS ENTIRE SUIT. ......................................13

     A.    The Digital Ad Tax Is a Tax Within the Meaning of the Tax
           Injunction Act and Not a Penalty. ........................................................15

     B.    Precedents Addressing the Limits of the Federal Taxing Power
           Do Not Impose Limits on State Taxes, but Even If Their
           Analysis Applied, the Digital Ad Tax Would Satisfy Their Test
           for What Constitutes a Tax..................................................................18

     C.    Plaintiffs' Arguments Cannot Overcome Applicable Precedent
           Demonstrating Why the Digital Ad Tax Is a Tax and Not a
           Penalty. .............................................................................................22

D.    *Valero*'s Three-part Test Conflicts with More Recent Supreme Court Precedent, but If the Test Applies, the Digital Ad Tax Constitutes a Tax Under *Valero*. ..........................................26

E.    The Tax Injunction Act Bars This Entire Suit, Including All Counts..................................................................................31

III.    COMITY CALLS FOR DISMISSAL OF THIS SUIT. .................................33

IV.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN WITHHOLDING INJUNCTIVE AND DECLARATORY RELIEF AND DISMISSING COUNT IV AS PRUDENTIALLY MOOT IN LIGHT OF THE JUDGMENT IN A PARALLEL STATE COURT PROCEEDING THAT IS PENDING APPEAL. ........................................................................36

V.    THIS COURT'S PRACTICE IS TO AVOID ADDRESSING THE MERITS WHERE THE DISTRICT COURT DID NOT ADDRESS THEM, BUT IF THE COURT DEPARTS FROM THAT PRACTICE, IT SHOULD REJECT PLAINTIFFS' FIRST AMENDMENT CLAIM. .........................................40

A.    This Case Presents No Reason for the Court to Depart from Its Customary Practice.................................................................40

B.    If the Court Reaches the Merits, the Direct Pass-Through Prohibition Regulates Conduct and Does Not Offend the First Amendment. .........................................................................42

1.    The Direct Pass-Through Prohibition Regulates Conduct, Not Speech. ..................................................................43

2.    Plaintiffs Have Failed to Make the Threshold Showing for a Facial Challenge. ..............................................47

3.    At Most § 7.5-102(c) Affects Unprotected Incidental Speech Integral to Unlawful Activity. ......................48

4.    Content-based and Political Speech Analyses Do Not Apply..........................................................................50

5.    The Act Withstands *Central Hudson* Analysis.........................53

CONCLUSION ......................................................................................55

CERTIFICATE OF COMPLIANCE ........................................................................56

## TABLE OF AUTHORITIES

Page

### Cases

*Arkansas Times LP v. Waldrip*, 37 F.4th 1386 (8th Cir. 2022) ..............................57

*Bailey v. Drexel Furniture Co.*, 259 U.S. 20 (1922) ................................. 21, 25, 29

*BellSouth Telecomm. v. Farris*,
    542 F.3d 499 (6th Cir. 2008) ............................ 13, 36, 47, 48, 49, 50, 51, 55, 58

*Benisek v. Lamone*, 138 S. Ct. 1942 (2018)............................................................45

*Bloom v. O'Brien*, 841 F. Supp. 277 (D. Minn. 1993) ..................................... 49, 55

*California v. Grace Brethren Church*, 457 U.S. 393 (1982)...................................16

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*,
    447 U.S. 557 (1980)................................................................. 13, 55, 56, 57, 58

*CIC Servs., LLC v. I.R.S.*,
    141 S. Ct. 1582 (2021)...................................... 11, 17, 18, 20, 30, 31, 34, 35, 36

*City of Austin v. Reagan Nat'l Advertising of Austin, LLC*,
    142 S. Ct. 1464 (2022).........................................................................................56

*City of Baltimore v. Azar*, 973 F.3d 258 (4th Cir. 2020) ................................. 14, 43

*Clear Channel Outdoor, Inc. v. City of Baltimore*,
    153 F. Supp. 3d 865 (D. Md. 2015)....................................................................34

*Clear Channel Outdoor, Inc. v. City of Baltimore*,
    22 F. Supp. 3d 519 (D. Md. 2014)......................................................................31

*Club Ass'n v. Wise*, 293 F.3d 723 (4th Cir. 2002) .................................................33

*Collins Holding Corp. v. Jasper County*, 123 F.3d 797 (4th Cir. 1997) ................32

*Comptroller v. Zorzit*, 221 Md. App. 274 (2015) .....................................................8

*Crosby v. City of Gastonia*, 635 F.3d 634 (4th Cir. 2011) .....................................15

*Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1 (2015) .................................... 21, 32, 37, 38

*Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129 (10th Cir. 2016) ................................ 38

*DIRECTV, Inc. v. Tolson*, 513 F.3d 119 (4th Cir. 2008) .......................................... 39

*Dixon v. City of St. Louis*, 950 F.3d 1052 (8th Cir. 2020) .................................... 44

*Educational Media Co. v. Insley*,
    731 F.3d 291 (4th Cir. 2013) ................................................................ 59

*Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 737 F.3d 228 (2d Cir. 2013) ......... 33

*Expressions Hair Design v. Schneiderman*, 581 U.S. 37 (2017) ...................... 53, 55

*Folio v. City of Clarksburg*, 134 F.3d 1211 (4th Cir. 1998) .................................... 16

*Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020) .................................................. 45

*Frey v. Comptroller,* 422 Md. 111 (2011) .......................................................... 9

*Furnitureland S., Inc. v. Comptroller*, 364 Md. 126 (2001) .................................. 9

*GenOn Mid-Atl., LLC v. Montgomery County*, Md.
    650 F.3d 1021 (4th Cir. 2011) ........................................... 14, 15, 25, 33, 44, 45

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) .......................... 52, 53

*Gonzalez v. Sessions*, 894 F.3d 131 (4th Cir. 2018) ........................... 20, 25, 26, 27

*Graham v. Dupont*, 262 U.S. 234 (1923) .......................................................... 25

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. City of Baltimore*,
    721 F.3d 264 (4th Cir. 2013) ...................................................... 47, 52

*Gwozdz v. HealthPort Techs., LLC*, 846 F.3d 738 (4th Cir. 2017) ................. 16, 39

*Helvering v. National Grocery Co.*, 304 U.S. 282 (1938) ..................................... 40

*In re SDDS, Inc.*, 97 F.3d 1030 (8th Cir. 1996) .................................................. 44

*International Harvester Co. v. Wisconsin Dep't of Taxation*,
    322 U.S. 435 (1944) .......................................................................... 40

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413 (2010) ........................... 37, 38, 39

*Liberty Univ. v. Geithner*, 568 U.S. 1022 (2012) ..................................................23

*Liberty Univ., Inc. v. Geithner*, 671 F.3d 391 (4th Cir. 2011).................................23

*Liberty Univ., Inc. v. Lew*,
   733 F.3d 72 (4th Cir. 2013) .................................. 23, 24, 25, 29, 30, 34

*Lipke v. Lederer*, 259 U.S. 557 (1922) ...................................................... 25, 27, 28

*Lynn v. West*, 134 F.3d 582 (4th Cir. 1998)...................................................... 27, 28

*Medical Mut. Ins. Co. of N.C. v. Littaua*,
   35 F.4th 205 (4th Cir. 2022) .........................................................................14

*Mobil Oil Corp. v. Tully*, 639 F.2d 912 (2d Cir. 1981) ..........................................36

*Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*,
   425 U.S. 463 (1976).......................................................................................16

*National Fed'n of Indep. Bus. v. Sebelius*,
   567 U.S. 519 (2012)..................................... 12, 18, 19, 20, 21, 22, 23, 24, 30, 31

*National Inst. of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018)..................................................................................52

*National Private Truck Council, Inc. v. Oklahoma Tax Comm'n*,
   515 U.S. 582 (1995)......................................................... 36, 37, 38, 42

*National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679 (1978).................53

*Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847 (Wash. 2007).. 13, 48, 49, 50, 51

*New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*,
   416 F.3d 290 (4th Cir. 2005) .........................................................................43

*New York, Lake Erie & W.R.R. Co. v. Pennsylvania*, 153 U.S. 628 (1894)...........22

*Norfolk S. Ry. Co. v. City of Roanoke*, 916 F.3d 315 (4th Cir. 2019) ....................31

*Perry v. Bartlett*, 231 F.3d 155 (4th Cir. 2000) .....................................................45

*Porter v. Clarke*, 852 F.3d 358 (4th Cir. 2017) ......................................... 15, 44, 45

*Recht v. Morrisey*, 32 F.4th 398 (4th Cir. 2022).................................. 50, 55, 56, 58

vi

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ........................................................56

*Regal Drug Corp. v. Wardell*, 260 U.S. 386 (1922)................................... 25, 28

*Retail Industry Leaders Ass'n v. Fielder*, 475 F.3d 180 (4th Cir. 2007).......... 25, 31

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
601 F.3d 1096 (10th Cir. 2010) ........................................................14

*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981)............................................16

*S-1 v. Spangler*, 832 F.2d 294 (4th Cir. 1987)............................................ 40, 41, 42

*Sanchez v. Office of the State Superintendent of Educ.*,
959 F.3d 1121 (D.C. Cir. 2020)............................................................44

*United States v. Alicea*, 58 F.4th 155 (4th Cir. 2023)................................... 20, 25

*United States v. Bethea*, 54 F.4th 826 (4th Cir. 2022)............................................41

*United States v. Chappell*, 691 F.3d 388 (4th Cir. 2012) ........................................52

*United States v. De Leon*, 728 F.3d 500 (5th Cir. 2013) ........................................53

*United States v. High*, 997 F.3d 181 (4th Cir. 2021) ................................................41

*United States v. La Franca*, 282 U.S. 568 (1931) ...................................................20

*United States v. McLean*, 715 F.3d 129 (4th Cir. 2013)..........................................52

*United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020) ................................... 46, 51

*United States v. Reorganized CF&I Fabricators of Utah, Inc.*,
518 U.S. 213 (1996)............................................................. 19, 20

*United States v. Smith*, 395 F.3d 516 (4th Cir. 2005)............................................15

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................................53

*Valero Terrestrial Corp. v. Caffrey*,
205 F.3d 130 (4th Cir. 2000) ............................. 11, 17, 22, 30, 31, 32, 33, 34, 39

*Wag More Dogs LLC v. Cozart*, 680 F.3d 359 (4th Cir. 2012)................................55

*Walker v. Texas Div., Sons of Confederate Veterans, Inc.*,
  576 U.S. 200 (2015)..............................................................................55

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008)......................................................................... 46, 48

*Wild Va. v. Council on Env't Quality*, 56 F.4th 281 (4th Cir. 2022).......................16

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008).......................................43

## Constitutional Provisions

U.S. Const. amend XIV, § 1 ......................................................................3

U.S. Const. amend. I ......................................4, 5, 12, 13, 44-47, 49, 52, 53, 55-58

U.S. Const. amend. X...............................................................................21

U.S. Const. art. I, § 8, cl. 1.................................................................. 21, 22

U.S. Const. art. I, § 8, cl. 3.................................................................. 3, 4, 5

Md. Const. art. VI, § 2 ........................................................................4, 32

## Statutes

26 U.S.C. § 7421 ................................................ 17, 21, 27, 28, 30, 32, 34

26 U.S.C. § 7421(a) ............................................................................34

28 U.S.C. § 1291 ................................................................................2

28 U.S.C. § 1341 ..........................................1, 9-12, 15-17, 19-22, 30-32, 34, 36-39

42 U.S.C. § 1983 ......................................................................... 16, 38

47 U.S. § 151 note................................................................................3

47 U.S.C.§ 151 note...........................................................................5, 19

2021 Md. Laws ch. 36...........................................................................34

2021 Md. Laws ch. 37...........................................................................1, 32

2021 Md. Laws ch. 55..............................................................................34

2021 Md. Laws ch. 669, § 1...................................................................6, 7

Md. Code Ann., Educ. § 1-301(a) (LexisNexis 2022)................................7

Md. Code Ann., Tax-Gen. § 7.5-102(c) (LexisNexis 2022) ...........*passim*

Md. Code Ann., Tax-Gen. § 2-102(a) (LexisNexis 2022)..........................32

Md. Code Ann., Tax-Gen. § 2-202(a) (LexisNexis 2022)............................4

Md. Code Ann., Tax-Gen. § 2-4A-01 (LexisNexis 2022)...........................7

Md. Code Ann., Tax-Gen. § 2-4A-02 (LexisNexis 2022)...........................7

Md. Code Ann., Tax-Gen. § 7.5-101 (LexisNexis 2022)......................6, 27

Md. Code Ann., Tax-Gen. § 7.5-101(c) (LexisNexis 2022) .........................6

Md. Code Ann., Tax-Gen. § 7.5-101(d) (LexisNexis 2022) .........................6

Md. Code Ann., Tax-Gen. § 7.5-102 (LexisNexis 2022)......................6, 27

Md. Code Ann., Tax-Gen. § 7.5-102(a) (LexisNexis 2022) .................6, 24

Md. Code Ann., Tax-Gen. § 7.5-102(b)(1) (LexisNexis 2022).....................7

Md. Code Ann., Tax-Gen. § 7.5-102(b)(2) (LexisNexis 2022).....................7

Md. Code Ann., Tax-Gen. § 7.5-103 (LexisNexis 2022)......................6, 27

Md. Code Ann., Tax-Gen. § 13-401 (LexisNexis 2022) ............................8

Md. Code Ann., Tax-Gen. § 13-402 (LexisNexis 2022) ............................8

Md. Code Ann., Tax-Gen. § 13-508 (LexisNexis 2022) ............................8

Md. Code Ann., Tax-Gen. § 13-510 (LexisNexis 2022) ............................8

Md. Code Ann., Tax-Gen. § 13-510(a)(2) (LexisNexis 2022).....................8

Md. Code Ann., Tax-Gen. § 13-528(a) (LexisNexis 2022)........................8

Md. Code Ann., Tax-Gen. § 13-532(a) (LexisNexis 2022)........................8

Md. Code Ann., Tax-Gen. § 13-901 (LexisNexis 2022)..........................................8

Md. Code Ann., Tax-Gen. § 13-902 (LexisNexis 2022)..........................................8

Md. Code Ann., Tax-Gen. § 13-904 (LexisNexis 2022)..........................................8

## Regulations

Md. Code Regs. 03.12.01.02..........................................................................................7

## Miscellaneous

*Black's Law Dictionary* (10th ed. 2014)............................................................. 18, 23

International Monetary Fund, "Estimating VAT Pass Through" (Sept. 2015)  47, 55

*Webster's Third New Internat'l Dictionary*
    (Philip Babcock Gove, *et al.* eds., 2002) ....................................................... 18, 23

Werner Antweiler, "Tax Pass-through for Beginners," (Sept. 29, 2018)......... 47, 55

No. 22-2275

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## CHAMBER OF COMMERCE OF THE
## UNITED STATES OF AMERICA, et al.,

*Plaintiffs-Appellants*,

v.

## BROOKE LIERMAN,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the District of Maryland
(Lydia Kay Griggsby, District Judge)

_____

## BRIEF OF APPELLEE

_____

## JURISDICTIONAL STATEMENT

The Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, deprived the district court of subject matter jurisdiction to entertain this suit challenging Maryland's Digital Advertising Gross Revenues Tax Act ("the "Act"), 2021 Md. Laws chs. 37, 669, Md. Code Ann., Tax-Gen. 7.5 (LexisNexis 2022). The district court dismissed three of the amended complaint's four counts on TIA grounds in a

memorandum and order filed March 4, 2022 (J.A.144-60), which was vacated and replaced by a revised memorandum and order on March 31, 2022 (J.A.161-77). The district court dismissed the remainder of the amended complaint as prudentially moot on December 2, 2022. (J.A.429-37.) On December 12, 2022, the court entered final judgment, dismissing Counts I, II, and III "with prejudice" and Count IV "without prejudice" for lack of subject matter jurisdiction. (J.A.438.)

Plaintiffs filed a notice of appeal on December 13, 2022. (J.A.439.) This Court has jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.    Does the Tax Injunction Act Bar this entire lawsuit, because it seeks a declaration and injunction against enforcement of Maryland's Digital Advertising Gross Revenues Tax on sellers of digital advertising services?

2.    Does comity call for dismissal of this suit, which is also the subject of litigation now pending in the Supreme Court of Maryland?

3.    Did the district court act within its discretionary power to withhold injunctive and declaratory relief for prudential reasons?

4.     Does the direct pass-through prohibition regulate conduct, not speech, and if it regulates speech does it withstand the applicable intermediate level of scrutiny?

## STATEMENT OF THE CASE

### Procedural Background

Four non-profit organizations purporting to represent the interests of various for-profit corporate taxpayers filed this suit challenging the Act on February 18, 2021 (J.A.5) and six weeks later filed an amended complaint (J.A.6, 13-24).  The amended complaint asserted that imposition of the tax violated the Internet Tax Freedom Act ("ITFA"); 47 U.S. § 151 note (Count I); the dormant Commerce Clause, U.S. Const. art. I, § 8, cl. 3 (Count II); and the Due Process Clause, U.S. Const. amend XIV, § 1 (Count III), and that the Act's prohibition against "directly pass[ing] on the cost of the tax ... by means of a separate fee, surcharge, or line-item," Md. Code Ann., Tax-Gen. § 7.5-102(c), violated either the dormant Commerce Clause or the First Amendment (Count IV).[1]

On June 15, 2021, the defendant, the Comptroller of Maryland, the state officer responsible for administering the tax laws, Md. Const. art. VI, § 2; Md. Code Ann., Tax-Gen. § 2-202(a) (the "State"), moved to dismiss for lack of

---

[1] On April 4, 2022, the plaintiffs "withdr[e]w that part of the Amended Complaint claiming that Tax-General § 7.5-102(c) violates the Commerce Clause or dormant Commerce Clause."  (J.A.178.)

subject-matter jurisdiction on TIA and other grounds and failure to state a claim. (J.A.7, 35-37.)  Plaintiffs filed an opposition to the motion to dismiss and a cross-motion for summary judgment on July 29, 2021.  (J.A.7.) Consideration of these dispositive motions involved multiple rounds of briefing, and several hearings. (J.A.63-143, 182-270, 320-407.)  In the operative revised memorandum and order issued on March 31, 2022, the court granted the motion to dismiss on TIA grounds as to Counts I-III but declined to dismiss the challenge to the direct pass-through prohibition, Tax-Gen. § 7.5-102(c).  (J.A.9, 161-77.)

After further briefing on plaintiffs' remaining claim, plaintiffs notified the court that in *Comcast of California/Maryland/Pennsylvania/Virginia/West Virginia LLC, et al. v. Comptroller*, a suit challenging the Act, the Circuit Court for Anne Arundel County had granted plaintiffs' summary judgment motion upon concluding that the Act violates the Supremacy Clause, the ITFA, the Commerce Clause, and the First Amendment.  (J.A.271-74.)  On December 2, 2022, the district court issued an order exercising its discretion to withhold declaratory and injunctive relief and dismissing plaintiffs' remaining claim as prudentially moot. (J.A.429-37.)

**Factual Background**

**Maryland's Digital Ad Tax Act**

The Act imposes a tax on a business's annual gross revenues derived from digital advertising services in Maryland, if the business has at least $100 million in global annual gross revenues, Tax-Gen. §§ 7.5-102, 7.5-103. "'Digital advertising services' includes advertisement services on a digital interface, including advertisements in the form of banner advertising, search engine advertising, interstitial advertising, and other comparable advertising services." *Id.* § 7.5-101(d). The Act excludes advertising services on digital interfaces owned or operated by a broadcast entity or news media entity, 2021 Md. Laws ch. 669, § 1 (amending Tax-Gen. § 7.5-101), and prohibits a covered taxpayer from directly passing on the cost of the digital ad tax to a purchaser of digital advertising services, *id.* (amending Tax-Gen. § 7.5-102).

The progressive tax rate is graduated in increments of 2.5%, from 2.5% to 10%, based on the business's global annual gross revenues, Tax-Gen. § 7.5-103; the "assessable base" is the business's "annual gross revenues derived from digital advertising services in the State,", *id.* § 7.5-101(c). The assessable base is determined using an apportionment fraction based on the annual gross revenues of the business derived from digital advertising services in the State (the numerator) and in the United States (the denominator). *Id.* § 7.5-102(b)(1). "The Comptroller

shall adopt regulations that determine the state from which revenues from digital advertising services are derived." *Id.* § 7.5-102(b)(2) ; *see* Md. Code Regs. 03.12.01.02 ("Revenues Derived from Digital Advertising Services in the State"); *id.*, 03.12.01.03 ("Revenues Derived from the United States").

After deducting the costs to administer the tax, Tax-Gen. § 2-4A-01, all remaining revenues are distributed to the Blueprint for Maryland's Future Fund, Tax-Gen. § 2-4A-02, for use in implementing the Blueprint for Maryland's Future, which is intended to "transform Maryland's education system to world-class student achievement levels," Md. Code Ann., Educ. § 1-301(a).

The Act is "applicable to all taxable years beginning after December 31, 2021." 2021 Md. Laws ch. 669, § 1.

### Statutory Remedy for Contesting a Tax Liability

Maryland has an "extensive and comprehensive" remedial scheme, *Comptroller v. Zorzit*, 221 Md. App. 274, 293 (2015), that provides a taxpayer a choice between pre- and post-deprivation methods for contesting alleged tax liabilities.[2] Any taxpayer who wishes to assert that a tax is illegal or inapplicable has a choice of two methods to contest tax liability: (1) decline to pay the tax and

---

[2] Under a pre-deprivation method, a tax authority assesses the taxpayer for the tax due and the taxpayer appeals that assessment before paying the tax. *E.g.*, Tax-Gen. §§ 13-401, 13-402, 13-508, 13-510. A post-deprivation method calls for the taxpayer to pay the tax due, seek a refund and, if the refund is denied, appeal that denial. *E.g.*, Tax-Gen. §§ 13-901, 13-902, 13-904, 13-508, 13-510.

be assessed, or (2) pay the tax and seek a refund. Either way, an aggrieved taxpayer is entitled to appeal the Comptroller's final determination to the Maryland Tax Court (an administrative agency) and may then seek judicial review. Tax-Gen. §§ 13-510(a)(2), 13-532(a). "The Tax Court shall have full power to hear, try, determine, or remand any matter before it," and "may reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to the Tax Court," Tax-Gen. § 13-528(a), including the power to abate penalties and interest, *Frey v. Comptroller,* 422 Md. 111, 184-85 (2011). The Tax Court is "'fully competent to resolve issues of constitutionality and the validity of statutes or ordinances in adjudicatory administrative proceedings which are subject to judicial review.'" *Furnitureland S., Inc. v. Comptroller*, 364 Md. 126, 138 (2001) (citations omitted).

### Allegations in the Amended Complaint

According to the amended complaint, the plaintiffs are organizations not themselves subject to the digital ad tax but whose members "will be liable" for the tax. (J.A.16-18 ¶¶15, 14-21.) Plaintiffs assert that the digital ad tax is "a punitive fee, penalty, or fine, and not a 'tax' within the meaning of the [TIA]" (J.A.21 ¶38), but they also insist that "it does constitute a 'tax' for purposes of ITFA preemption" (J.A.24 ¶52). They allege that "[t]he Act targets a very small number of large companies" (J.A.21 ¶39) but also allege that they have "[m]any" members

that are "liable to pay the charge imposed by the Act" (J.A.16-18, ¶¶15, 19, 21 (emphasis added)).

Plaintiffs allege that the "vast majority of the global gross annual revenues of large online digital advertising companies are earned outside of Maryland." (J.A.28 ¶68.)  Because the digital ad tax rate is based on an advertiser's global revenues, plaintiffs assert that it "punishes" them for their "extraterritorial activities" (J.A.21 ¶42), "extraterritorial conduct" (J.A.31 ¶84), and "earning of revenues outside of Maryland" (J.A.32 ¶92).  Plaintiffs assert that the tax violates the ITFA's prohibition of "discriminatory" and "multiple" taxes (J.A.29 ¶77), but the amended complaint's allegations contradict that assertion (1) by highlighting various ways digital advertising services are not "similar" to untaxed nondigital advertising (J.A.28-29, ¶¶71-75), as required to come within the ITFA's definition of "discriminatory," *id.* § 1105(2)(A), and (2) by pointing out that Maryland's tax "imposes a one-of-a-kind charge" not duplicative of taxes imposed by other jurisdictions (J.A.18 ¶25).  The amended complaint further asserts that the Act's prohibition against "directly pass[ing] on the cost of the tax ... by means of a separate fee, surcharge, or line-item," Tax-Gen. § 7.5-102(c), is a "content-based regulation of speech" and that the act of imposing a "separate fee, surcharge, or line-item" constitutes either "core political speech" or "commercial speech." (J.A.33 ¶¶96(a), 96(b)).

## SUMMARY OF ARGUMENT

The TIA bars this entire suit, because the TIA deprives federal courts of jurisdiction over any action to enjoin, suspend, or restrain the assessment, levy, or collection of any state tax where the State's laws provide a "plain, speedy and efficient remedy." This Court has held that Maryland law provides such a remedy.

The TIA's jurisdictional barrier applies to actions for declaratory and injunctive relief seeking to invalidate and enjoin collection of a tax, as this lawsuit does. According to the operative amended complaint, "This lawsuit seeks a declaration and injunction against enforcement of Maryland House Bill 732, as amended by Senate Bill 787, ... insofar as it imposes a 'Digital Advertising Gross Revenues Tax' on sellers of digital advertising services." (J.A.13 ¶1.) Therefore, this lawsuit must be dismissed in its entirety.

Attempting to evade the barrier of the TIA, plaintiffs argue that the digital ad tax is really a punitive fee, penalty, or fine imposed on disfavored activity—digital advertising—and not a tax, but that argument fails because digital advertising is a perfectly lawful activity under Maryland law. Thus, the Act imposes a tax, not a penalty or fine, under either the test employed by the district court, based on *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000), or the Supreme Court's more recent jurisprudence explaining that a tax cannot be deemed a penalty merely because it taxes "conduct that [is] legal but disfavored for tax

purposes." *CIC Servs., LLC v. I.R.S.*, 141 S. Ct. 1582, 1593 (2021). "[I]if the concept of penalty means anything, it means punishment for an unlawful act or omission." *National Fed'n of Indep. Bus.* ("*NFIB*") *v. Sebelius*, 567 U.S. 519, 567 (2012).

If the Court does not conclude that the TIA bars this action or any part of it, then the Court should still order the case dismissed on grounds of comity because, even where the TIA does not preclude jurisdiction, longstanding principles of federalism and comity counsel a hands-off approach to state tax administration.

The district court did not abuse its discretion in concluding that prudential concerns warranted dismissal, without prejudice, of plaintiffs' remaining challenge to the Act's direct pass-through prohibition. The district court acted well within its discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot, after receiving notice that a Maryland circuit court had declared the Act unconstitutional on First Amendment and other grounds, and the Comptroller was seeking review of that decision by the Supreme Court of Maryland.

Irrespective of whether it affirms or reverses, this Court's usual practice is to refrain from addressing the merits when, as here, the district court did not rule on them. If the Court does depart from its usual practice and considers the merits, it should reject plaintiffs' First Amendment facial challenge, for at least five reasons:

1.    Tax-General § 7.5-102(c)'s prohibition against "directly pass[ing] on the cost of the tax ... to a customer ... by means of a separate fee, surcharge, or line-item" does not implicate First Amendment concerns, because it does not restrict speech and regulates only the *conduct* of directly charging the digital ad tax to customers, as courts have held in the only known cases addressing First Amendment challenges to tax pass-through prohibitions, *BellSouth Telecomm., Inc. v. Ferris*, 542 F.3d 499, 510-11 (6th Cir. 2008); *Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847, 852-53 (Wash. 2007) (en banc);

2.    Plaintiffs have failed to make the threshold showing required for a facial challenge to a statute;

3.    If the prohibition affected speech at all it would be limited to an incidental effect on speech integral to the unlawful activity of directly passing on the cost of the digital ad tax to customers in violation of Tax-General § 7.5-102(c), which is not protected speech;

4.    Applicable precedent renders it inappropriate to subject the direct pass-through prohibition to content-based restriction or political speech analysis, as advocated by plaintiffs; and

5.    The pass-through prohibition withstands intermediate scrutiny under *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980).

# ARGUMENT

I.    **THE STANDARD OF REVIEW IS DE NOVO FOR DISMISSAL UNDER THE TAX INJUNCTION ACT AND ABUSE OF DISCRETION FOR THE DISTRICT COURT'S DECISION TO WITHHOLD DECLARATORY AND INJUNCTIVE RELIEF, BUT THE COURT DOES NOT REVIEW THE MERITS.**

The Court reviews *de novo* dismissal of Counts I-III for lack of subject matter jurisdiction on TIA grounds. *GenOn Mid-Atl., LLC v. Montgomery County, Md.*, 650 F.3d 1021, 1023 (4th Cir. 2011). The Court reviews for abuse of discretion the district court decision to "declin[e] to exercise jurisdiction" with respect to plaintiffs' remaining claim for declaratory and injunctive relief in Count IV "while a parallel action was (and is) pending in state court...." *Medical Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022) (citations omitted); *City of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."); *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) (reviewing prudential mootness finding for abuse of discretion "because this doctrine 'is concerned with the court's discretion to exercise its power to provide relief'") (citation omitted).

This Court's consideration is "not limited to evaluation of the grounds offered by the district court to support its decision," *United States v. Smith*, 395

F.3d 516, 519 (4th Cir. 2005) (citation omitted), and the Court may '"affirm the district court on any ground that would support the judgment in favor of the party prevailing below,'" *Crosby v. City of Gastonia*, 635 F.3d 634, 643 n.10 (4th Cir. 2011) (citation omitted).  Nevertheless, where, as here, the district court did not address the merits of plaintiffs' claims, neither will this Court, irrespective of whether it affirms or reverses.  *GenOn*, 650 F.3d at 1026 ("Of course we do not resolve this case on the merits, nor do we suggest that one party or the other should prevail on remand," but hold that "the [TIA] is no bar" and "remand for consideration of GenOn's claims."); *Porter v. Clarke*, 852 F.3d 358, 366 (4th Cir. 2017) ("The district court, however, did not address the merits of Plaintiffs' claims for declaratory and injunctive relief, ... because it concluded the case was moot, ... and therefore we decline to do so now.") (reversing and remanding).

## II.    THE TAX INJUNCTION ACT BARS THIS ENTIRE SUIT.

The TIA "removes the jurisdiction of federal courts over any action that would 'enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.'"  *Gwozdz v. HealthPort Techs.*, *LLC*, 846 F.3d 738, 742 (4th Cir. 2017) (quoting 28 U.S.C. § 1341).  The TIA's "broad jurisdictional barrier," *Moe v. Confederated Salish & Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 470 (1976), applies to "declaratory as well as injunctive relief," including

"injunctive or declaratory relief under [42 U.S.C.] § 1983," *Folio v. City of Clarksburg*, 134 F.3d 1211, 1214 (4th Cir. 1998) (citing *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982), and *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503 (1981)).  Plaintiffs' suit is the sort of action Congress sought to prevent when it enacted the TIA, because their amended complaint seeks to "declare ... unconstitutional" and "permanently enjoin" imposition of "a 'Digital Advertising Gross Revenues Tax'" (J.A.34 ¶¶2, 3), and Maryland law unquestionably provides "a plain, speedy and efficient remedy," as this Court has held, *Gwozdz*, 846 F.3d at 740 ("Maryland has established just such a remedy" with its '"comprehensive remedial scheme...."') (citation omitted).[3]

The digital ad tax is a "tax" within the meaning of the TIA, as the district court concluded by applying the criteria in *Valero*, 205 F.3d at 134. (J.A.171-73.) The tax satisfies those criteria, but the *Valero* test has been superseded by more recent decisions of the Supreme Court and this Court.  Under those decisions, it becomes even clearer that the digital ad tax is a tax and not, as plaintiffs contend, a penalty.  The TIA requires dismissal of this entire action.

---

[3] Below, plaintiffs argued that Maryland law's remedy is not "efficient," ECF 31-1 at 43, but their opening brief omits that argument. *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022) ("[W]here Plaintiffs have failed to raise an argument in their opening brief, they have waived it.").

### A.     The Digital Ad Tax Is a Tax Within the Meaning of the Tax Injunction Act and Not a Penalty.

Plaintiffs contend that the digital ad tax is a "punitive fee, penalty, or fine, and not a 'tax'" (J.A.21 ¶38), because it imposes what plaintiffs consider to be an unacceptably high cost for engaging in practices "the Act disapproves of and disfavors." (J.A.21 ¶¶40-41.) Their challenge cannot satisfy the clear test the Supreme Court and this Court have established for identifying a "penalty." [4] Under this test, the digital ad tax cannot be deemed a penalty merely because it taxes "conduct that [is] legal but disfavored for tax purposes." *CIC Servs.*, 141 S. Ct. at 1593.

A government charge may be treated as a "penalty" that is exempt from the jurisdictional bar of the Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421, and the TIA only if it meets one of two conditions: (1) Congress has described the imposition as a "penalty" and not a "tax," *see, e.g.*, *NFIB*, 567 U.S. at 564, or (2) the charge is imposed as a sanction for "the violation of another law that independently prohibits or commands an action," and thereby renders unlawful the activity that is subject to the charge, *CIC Servs.*, 141 S. Ct. at 1593. If, however, applicable law permits the taxpayer to engage in the taxed activity, and neither the challenged legislation "nor any other law attaches negative legal consequences" to

_____

[4] Pertinent case law discussed below assigns similar meanings to "punitive fee," "penalty," and "fine." Therefore, this brief uses the term "penalty," as did the district court. (J.A.171-73.)

that activity "beyond requiring a payment to the [taxing authority]," then the charge is not imposed as "punishment for an unlawful act or omission," and the legislation at issue "merely imposes a tax" and not a "penalty,"[5] *NFIB*, 567 U.S. at 568.

The first of the two "penalty" scenarios is not at issue here, because there is no contention that Congress has provided that the digital ad tax, or taxes like it, should be treated as "penalties." Quite the contrary: the amended complaint (J.A.25 ¶55; 29 ¶77) alleges that the digital ad tax is a "tax" as defined by Congress in the ITFA to include "any charge imposed by any governmental entity for the purpose of generating revenues for governmental purposes" that "is not a fee imposed for a specific privilege, service, or benefit conferred." ITFA § 1105(8)(A)(i) (emphasis added). Plaintiffs concede that the digital ad tax "is a governmental charge with revenue-generating purposes and is not a fee assessed for a specific privilege, service, or benefit conferred." (J.A.29 ¶77.) Therefore, because both the TIA and the ITFA "are creatures of Congress's own creation," and the "best evidence of Congress's intent is the statutory text," Supreme Court precedent requires application of the TIA's jurisdictional bar to this suit challenging what are "statutorily described" by the ITFA as "'taxes.'" *NFIB*, 567

---

[5] As pointed out in *NFIB*, a departure from this formula may arise if Congress exercises its authority to "describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the [AIA]." 567 U.S. at 544.

U.S. at 544; *see id*. at 564 ("It is up to Congress whether to apply the Anti-Injunction Act [or the TIA] to any particular statute, so it makes sense to be guided by Congress's choice of label on that question.").

As for the second means of establishing that a charge is a "penalty," the Supreme Court and this Court have emphasized repeatedly, in multiple contexts, that "[i]n distinguishing penalties from taxes, ... 'if the concept of penalty means anything, it means punishment for an unlawful act or omission.'" *NFIB*, 567 U.S. at 567 (quoting *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 224 (1996), and citing *United States v. La Franca*, 282 U.S. 568, 572 (1931)).  Thus, whereas "'[a] tax is an enforced contribution to provide for the support of government; a penalty, ... is an exaction imposed by statute as punishment for an unlawful act.'" *Reorganized CF&I Fabricators*, 518 U.S. at 224 (quoting *La Franca*, 282 U.S. at 572) (emphasis added).  Last month, this Court reaffirmed this same essential distinction.  *United States v. Alicea*, 58 F.4th 155, 159 (4th Cir. 2023) (quoting *Reorganized CF & I Fabricators*, 518 U.S. at 224).  Using the words "punitive" and "punish," as the amended complaint sometimes does (J.A.21-23, ¶¶40, 42, 43, 47), merely reinforces this distinction, since "punishment is '[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law,'" or "'a penalty inflicted by a court of justice on a convicted offender.'" *Gonzalez v.*

17

*Sessions*, 894 F.3d 131, 137 (4th Cir. 2018) (quoting "Punishment," *Black's Law Dictionary* (10th ed. 2014); *Webster's Third New Internat'l Dictionary* 1843 (Philip Babcock Gove, *et al.* eds., 2002)).

Under these precedents, the digital ad tax qualifies as a "tax" and cannot be deemed a penalty or punitive, because it "imposes a cost on perfectly legal behavior," *CIC Servs.*, 141 S. Ct. at 1593, rather than some "unlawful act or omission,'" *NFIB*, 567 U.S. at 567, and "[t]he tax does not backstop the violation of another law that independently prohibits or commands an action," *CIC Servs.*, 141 S. Ct. at 1593. Therefore, in this case, the TIA "bars pre-enforcement review" and "prohibit[s] a taxpayer from bringing ... a 'preemptive[ ]' suit to foreclose tax liability." *Id.*

### B. Precedents Addressing the Limits of the Federal Taxing Power Do Not Impose Limits on State Taxes, but Even If Their Analysis Applied, the Digital Ad Tax Would Satisfy Their Test for What Constitutes a Tax.

As plaintiffs acknowledge, Br. 38-39, decisions interpreting the AIA serve as precedent for applying similar language in the TIA. *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 8 (2015) (interpreting the TIA in light of AIA case law). Yet, neither the Supreme Court's AIA precedent nor its TIA precedent supports the plaintiffs' proposition that the distinction between a penalty and a "tax" within the meaning of either statute somehow depends on a government exaction's rate, incidence, or deterrent purpose or effect. Plaintiffs' mistaken argument conflates

the Supreme Court's pronouncements regarding the AIA with those it has made about a materially different subject: the limits of the federal taxing power.

The Taxing Clause (Article I, § 8, cl. 1) and Tenth Amendment place some "limits" on "Congress's ability to use its taxing power to influence conduct ...," *NFIB*, 567 U.S. at 572; *see Bailey v. Drexel Furniture Co.*, 259 U.S. 20, 38 (1922), but those constitutional limits do not constrain the States, *NFIB*, 567 U.S. at 535. Unlike the federal government, the States possess a "general power of governing" known as "the 'police power,'" *id.* at 536, which includes the power to tax, *New York, Lake Erie & W.R.R. Co. v. Pennsylvania*, 153 U.S. 628, 643 (1894).

The Supreme Court's recent analysis of the Taxing Clause posits that, at some point (the "precise" coordinates of which the Court has left undecided), a federal exaction might "become[] so punitive that the taxing power does not authorize it." *NFIB*, 567 U.S. at 573 (declining to decide "the precise point"). But "[t]he same does not apply to the States," *id.* at 535, and there is no constitutional or statutory basis for applying such a limitation when considering whether the TIA bars a challenge to a state tax. Consequently, the term "tax" may have an even "broader" meaning under the TIA than the word has in some other federal law contexts. *Valero*, 205 F.3d at 133-34 (4th Cir. 2000) ("The TIA represents a recognition that states are best situated to administer their own fiscal operations," and "[a]s such, the term 'tax' is subject to a 'broader' interpretation when reviewed

under the aegis of the TIA.").  Nevertheless, even if analyzed under the Supreme

Court's "functional approach," *NFIB*, 567 U.S. at 565, which synthesizes the

Court's "narrowest interpretations of the [federal] taxing power," the digital ad

tax's "characteristics pass muster as a tax," *id.* at 573.

As explained in *Liberty University, Inc. v. Lew*, 733 F.3d 72 (4th Cir. 2013),

a challenge to the Affordable Care Act's "employer mandate" exaction on remand

for further consideration in light of the *NFIB* decision, *see Liberty Univ. v.

Geithner*, 568 U.S. 1022 (2012) (vacating and remanding *Liberty Univ., Inc. v.

Geithner*, 671 F.3d 391 (4th Cir. 2011)), the "functional approach" considers four

criteria for distinguishing a tax from a penalty:  (1) "the 'essential feature' of any

tax," which "is that 'it produces at least some revenue for the Government,'"

(2) "the absence of a scienter requirement," (3) "collection ... through the normal

means of taxation," and (4) "the absence of negative legal consequences beyond

requiring payment" to the taxing authority, i.e., the exaction "does not punish

unlawful conduct."  *Liberty Univ.*, 733 F.3d at 96, 98 (quoting *NFIB*, 567 U.S. at

564, and citing *id.* at 565-68).   This functional approach treats as "largely

irrelevant the 'regulatory motive or effect of revenue-raising measures,'" because

the Supreme Court has "rejected the revenue-versus-regulatory distinction as

defunct."  *Liberty Univ.*, 733 F.3d at 96 (quoting *NFIB*, 567 U.S. at 573).

20

Applying this functional approach to the digital ad tax confirms that it is a "tax," even under the "narrowest" understanding of a tax, *NFIB*, 567 U.S. at 573, because it satisfies each of the four criteria.  The parties agree that the digital ad tax satisfies the first and "essential feature," because all parties expect it to "produce[] at least some revenue for the Government," *Liberty Univ.*, 733 F.3d at 96.  (J.A.29 ¶77 (plaintiffs acknowledging the challenged Act's "revenue-generating purposes").  The digital ad tax satisfies the second criterion because liability for the tax does not depend on any "scienter requirement," *Id.*, 733 F.3d at 96; responsibility to pay the tax arises from "annual gross revenues of a person derived from digital advertising services in the State," Tax-Gen. § 7.5-102(a).  Just as the exaction in *Liberty University* "'looks like a tax'" because it was codified "'in the Internal Revenue Code[,] and enforced by the IRS,'" 733 F.3d at 97 (quoting *NFIB*, 567 U.S. at 563), the digital ad tax satisfies the third criterion because it is codified in the Tax-General Article and enforced by Maryland's tax collector, the Comptroller, "through the normal means of taxation," *Liberty Univ.*, 733 F.3d at 96.  Finally, the digital ad tax satisfies the fourth criterion because it does not involve "negative legal consequences" beyond the obligation to pay the tax, *id.*; that is, it "does not punish unlawful conduct," since the digital advertising services taxed are not prohibited by law, *id.* at 98.

21

### C.    Plaintiffs' Arguments Cannot Overcome Applicable Precedent Demonstrating Why the Digital Ad Tax Is a Tax and Not a Penalty.

Plaintiffs' penalty argument that rests primarily on two sources of authority: (1) two Fourth Circuit decisions, *GenOn* and *Retail Industry Leaders Ass'n* ("*RILA*") *v. Fielder*, 475 F.3d 180 (4th Cir. 2007), Br. 42-48, 47-48, 50-51, 53, 55, neither of which closely examined the distinction between a tax and a penalty; *and* (2) certain Supreme Court decisions from the early 1920s, including *Drexel Furniture*; *Lipke v. Lederer*, 259 U.S. 557 (1922); *Regal Drug Corp. v. Wardell*, 260 U.S. 386 (1922); and *Graham v. Dupont*, 262 U.S. 234 (1923).  Since *GenOn* and *RILA* were decided, this Court has issued decisions thoroughly examining the meaning of "penalty" and reaffirming that a penalty is a charge that punishes unlawful conduct.  As for the Supreme Court decisions plaintiffs cite, none support their argument.

In addition to the previously mentioned *Alicea*, 58 F.4th at 159, and *Liberty University*, 733 F.3d at 96, both of which agree that a charge is not a penalty unless it punishes unlawful conduct, this Court's more recent decisions include *Gonzalez v. Sessions*, 894 F.3d 131 (4th Cir. 2018), which examined the "ordinary, contemporary, common meaning" of "penalty" and "punishment," *id.* at 137 (citations omitted).

The digital ad tax does not fit within the plain meaning of penalty or punishment as determined in *Gonzalez*, where the Court considered the meaning of "penalty" and "punishment" according to their standard dictionary definitions, their use in various statutes, and their interpretation and application in case law addressing a variety of subjects and  determined that "a penalty is '[p]unishment imposed on a wrongdoer, usu[ally] in the form of imprisonment or fine,'" or "'the suffering in person, rights, or property which is annexed by law or judicial decision to the commission of a crime or public offense." 894 F.3d at 137 (quoting "Penalty," *Black's Law Dictionary* (10th ed. 2014); *Webster's Third New Internat'l Dictionary* 1668 (Philip Babcock Gove, *et al.* eds., 2002)). Similarly, "punishment is '[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law,'" or "'a penalty inflicted by a court of justice on a convicted offender.'" *Gonzalez*, 894 F.3d at 137 (quoting "Punishment," *Black's Law Dictionary*; *Webster's* at 1843). Thus, a key prerequisite of "penalty" and "punishment," as those terms are commonly understood, is an underlying "crime or public offense" or some "violated ... law." *Id.* The digital ad tax does not involve this key component of a "penalty" and "punishment," because the activity it taxes is not unlawful.[6] Thus,

---

[6] *Gonzalez* also identified other attributes of a typical "penalty" not found in the digital ad tax, *e.g.*, (1) the Act lacks a means of accounting for "culpability," such as when an "assessment 'varies in severity with the nature of the crime

the digital ad tax is neither a penalty nor a punishment according "to these long-standing and well-established understandings of the terms." *Gonzalez*, 894 F.3d at 139.

This same distinction between a tax and a penalty is underscored by the century-old Supreme Court decisions cited by plaintiffs. *Lipke* held that the challenged charge was a penalty and not a tax, for purposes of the AIA, because the charge was imposed by a statute "primarily designed to define and suppress crime," "[e]vidence of crime [was] essential to assessment" under the statute, and imposition of the charge "clearly involve[d] the idea of punishment for infraction of the law—the definite function of a penalty." 259 U.S. at 561-62. Relying on *Lipke*, *Regal Drug* "emphasized" the "distinction between a tax and a penalty": "The function of a tax, ... 'is to provide for the support of the government'; the function of a penalty clearly involves the 'idea of punishment for infringement of

---

committed,'" 894 F.3d at 138 (citation omitted); (2) the amount or severity of the charge the Act imposes does not go "'beyond remedying the damage caused to the harmed parties by the defendant's action,'" *id.* (citations omitted); *see, e.g., Lynn v. West*, 134 F.3d 582, 590 (4th Cir. 1998) ("Drug Tax" held to be a criminal penalty where the tax rate resulted in "liability of eight times the market value" of cocaine seized from one of the plaintiffs); and (3) the Act does not endow the digital ad tax collector "with discretion to determine both whether to impose the assessment and the amount of any assessment imposed," *id.* at 139; *see* Tax-Gen. §§ 7.5-101, 7.5-102, 7.5-103 (establishing nondiscretionary assessment requirement and rates for the digital ad tax).

the law[.]'" 260 U.S. at 391-92 (quoting *Lipke*, 259 U.S. at 562).[7] *Dupont* vacated an injunction and ordered dismissal on AIA grounds, and in so doing distinguished *Lipke* and *Regal Drug* because they "were not cases of enjoining taxes at all," but were challenges to "illegal penalties in the nature of punishment for a criminal offense." *Dupont*, 262 U.S. at 257. The AIA *did* apply in *Dupont*, however, because it presented "no such case" of charges imposed for unlawful conduct, *id.* at 258. *See also United States v. United States Indus. Alcohol Co.*, 103 F.2d 97, 100 (4th Cir. 1939) (holding that because the challenged tax on distilled spirits became effective in a period when "it was not a violation of the law to withdraw spirits for beverage purposes, ... the tax it levied cannot be classified as a punitive penalty"); *Lynn*, 134 F.3d at 591 (holding that North Carolina's "Drug Tax" was a penalty because it was "based on a criminal act" and had "no relationship to lawful possession," among other reasons).

Finally, this Court in *Liberty University* explained why *Drexel Furniture* does not support plaintiffs' proposition that a tax can be considered a penalty or

---

[7] As explained in both *Lipke* and *Regal Drug*, the AIA did not prevent a pre-enforcement court challenge to a penalty because, "in the absence of [statutory] language" to the contrary, the Court could not conclude that "Congress intended that *penalties for crime* should be enforced through the secret findings and summary action of executive officers," lest "[t]he guaranties of due process of law and trial by jury ... be forgotten or disregarded." *Lipke*, 259 U.S. at 562 (emphasis added); *Regal Drug*, 260 U.S. at 392 (same). That is, unlike taxes, "penalties for criminal violations of the law" cannot be lawfully assessed in the first instance "without notice or hearing." *Regal Drug*, 260 U.S. at 392.

punitive when imposed on lawful activity. Like the plaintiffs here, Liberty University argued, based on *Drexel Furniture*, that the challenged exaction "'cross[ed] the line' from a reasonable payment to a 'potentially destructive' unconstitutional penalty." *Liberty Univ.*, 733 F.3d at 98. This Court responded that "*Drexel* is easily distinguishable," *id.*, for reasons that apply equally here: "[i]n stark contrast to the penalty the Court struck down in *Drexel Furniture*, the employer mandate exaction is devoid of any scienter requirement and does not punish unlawful behavior," and "the exaction is collected ... in the same manner as a tax." *Liberty Univ.*, 733 F.3d at 98. The digital ad tax is similarly distinguishable from the exaction deemed a penalty in *Drexel Furniture*. As demonstrated above, the digital ad tax is a tax and not a penalty, since it is "devoid of any scienter requirement," "does not punish unlawful behavior," and "is collected ... in the same manner as a tax." *Liberty Univ.*, 733 F.3d at 98.

**D.  *Valero*'s Three-part Test Conflicts with More Recent Supreme Court Precedent, but If the Test Applies, the Digital Ad Tax Constitutes a Tax Under *Valero*.**

At plaintiffs' urging (J.A.83-85, 89-91), the district court assessed whether the digital ad tax constitutes "a tax or a penalty for TIA purposes" (J.A.171) by applying the three factors explained in *Valero*, 205 F.3d at 134 ("(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge"). *Valero*

does not comport with recent Supreme Court and Fourth Circuit precedent, for at least three reasons.

First, the Supreme Court has rejected the "revenue-raising" versus "regulatory" distinction that is central to *Valero*'s analysis of whether a charge is a "tax." As this Court has already acknowledged, the Supreme Court has "rejected the revenue-versus-regulatory distinction as defunct." *Liberty Univ.*, 733 F.3d at 96 (citing *NFIB*, 567 U.S. at 573); *see NFIB*, 567 U.S. at 573 ("More often and more recently we have declined to closely examine the regulatory motive or effect of revenue-raising measures."); *CIC Servs.*, 141 S. Ct. at 1593 ("[W]e have rejected the view that regulatory tax cases have a special pass from the [AIA]."), (citations omitted). The *Valero* test's incompatibility with the Supreme Court's recent analysis can be confirmed by contrasting what that Court has said, *e.g.*, *CIC Servs.*, 141 S. Ct. 1593-94 ("The [AIA] . . . draws no distinction between regulatory and revenue-raising tax rules."), with statements made in *Valero*, 205 F.3d at 134 ("[T]he general inquiry is to assess whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee.'"), and *RILA*, 475 F.3d at 189 ("[T]he [TIA's] ... applicability depends primarily on whether a given measure serves 'revenue raising purposes' rather than 'regulatory or punitive purposes.'").

Second, the *Valero* approach calls for weighing three factors with the aim of locating a challenged exaction somewhere on an imagined continuum ranging between a "classic tax" at one end and a "classic fee" at the other, 205 F.3d at 134, a process that can be "inconclusive as to whether the charge is a tax or a fee" even "after considering the ... three factors," *Clear Channel Outdoor, Inc. v. City of Baltimore*, 22 F. Supp. 3d 519, 525 (D. Md. 2014). Given its inherent uncertainty and variability of potential outcome, *see*, *e.g.*, *Norfolk S. Ry. Co. v. City of Roanoke*, 916 F.3d 315, 321 (4th Cir. 2019) ("Courts have reached different results in applying the third [*Valero*] factor to stormwater management charges."), the *Valero* test illustrates the lack of any "'bright-line distinctions ... between regulatory and revenue-raising taxes,'" since "'[e]very tax is in some measure regulatory'"—a reality that caused the Supreme Court to conclude there is no such distinction, *CIC Servs.*, 141 S. Ct. at 1593; *see NFIB*, 567 U.S. at 567 ("Indeed, 'every tax is in some measure regulatory. To some extent it interposes an economic impediment to the activity taxed as compared with others not taxed.'") (citation omitted).

Third, *Valero*'s multifactor weighing does not even purport to satisfy the Supreme Court's "rule favoring clear boundaries in the interpretation of jurisdictional statutes." *Direct Mktg.*, 575 U.S. at 11 (citation omitted); *see*, *e.g.*, *Collins Holding Corp. v. Jasper County*, 123 F.3d 797, 800 (4th Cir. 1997)

(acknowledging that under the multipart test "the line between 'tax' and 'fee' can be a blurry one"). In stark contrast, a "clear boundary" is exemplified by *CIC Services*' instruction that the AIA's statutory bar—and, therefore, the TIA as well—"applies whenever a suit calls for enjoining ... assessment and collection of taxes—of whatever kind." 141 S. Ct. at 1594.

In any case, the *Valero* test confirms that the digital ad tax is a tax and not a penalty, as the district court concluded. (J.A.171-73.) *Valero*'s first factor indicates "tax" because the digital advertising tax was enacted by the General Assembly, 2021 Md. Laws ch. 37, and will be administered by the State's general assessor and collector of taxes, the Comptroller, *id.* § 2, at 21 (amending Tax-Gen. § 2-102(a)); *see* Md. Const. art. VI, § 2. *Collins Holding*, 123 F.3d at 800 ("An assessment" is "more likely to be a tax" if "imposed directly by a legislature" and where "responsibility for administering and collecting the assessment lies with the general tax assessor," as opposed to "a regulatory agency.").

This Court has deemed the second factor—what population is subject to the charge—to be a "relatively minor" consideration. *Club Ass'n v. Wise*, 293 F.3d 723, 726 (4th Cir. 2002); *see also Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 737 F.3d 228, 233 (2d Cir. 2013) (The second factor "counts for too little to weigh against the strength of the other factors ...," since "[m]any revenue measures that are indisputably taxes ... fall on a limited portion of the population."). *GenOn*

29

remains the only Fourth Circuit decision treating the size of the assessed population as decisive, in a rare case where the exaction applied to only one entity and no one else.   650 F.3d at 1024 ("The chief problem with Montgomery County's carbon charge is that the burden falls on GenOn alone[.]").   Here, it is undisputed that "many" entities will be subject to the tax.   (J.A.16-18, ¶¶15, 19, 21.) Therefore, the number of taxpayers assessed satisfies *GenOn* because the digital ad tax will "apply to at least more than one entity." *Id.*

The digital advertising tax satisfies *Valero*'s third and "most important factor," which is "the purpose behind the statute" as determined by "the ultimate use of the revenue" generated.   *Valero*, 205 F.3d at 134; *see id.* ("[I]f the ultimate use of the revenue benefits the general public then the charge will qualify as a 'tax.'").   The challenged statute unquestionably benefits the general public, because the digital ad tax aims to generate revenues to fund the educational improvements adopted in the Blueprint for Maryland's Future, 2021 Md. Laws chs. 36, 55, which will benefit every public school district in the State.   Whether "revenue is placed in a special fund" has no bearing on whether the exaction is a "tax" if "the revenue of the fund is used to benefit the population at large," as revenue will be used to improve all Maryland's public schools via the Blueprint for Maryland's Future Fund.   *Valero*, 205 F.3d at 135; *see Clear Channel Outdoor, Inc. v. City of Baltimore*, 153 F. Supp. 3d 865, 874 (D. Md. 2015) (TIA barred suit

challenging provision generating "revenue to benefit the general public by funding programming at public schools"). Therefore, whether viewed according to *Liberty University*'s analysis or under *Valero*, the digital advertising tax is a "tax" within the meaning of the TIA.

### E. The Tax Injunction Act Bars This Entire Suit, Including All Counts.

As the Supreme Court has explained, to decide whether the AIA or TIA bars a challenged to tax legislation, a court must "look to the face of the ... complaint" to "determine the suit's object," and "[i]f the suit is for [the] purpose" of "'restraining the assessment or collection of any tax,'" then "it must be dismissed." *CIC Servs.*, 141 S. Ct. at 1588-89, 1588 (quoting 26 U.S.C. § 7421(a)). In this case, the "face of the [amended] complaint" leaves no doubt about "the action's objective aim," *id.* at 1589: "This lawsuit seeks a declaration and injunction against enforcement of Maryland House Bill 732, as amended by Senate Bill 787, ... insofar as it imposes a 'Digital Advertising Gross Revenues Tax' on sellers of digital advertising services." (J.A.13 ¶1.) Therefore, this lawsuit "must be dismissed" in its entirety. *CIC Servs.*, 141 S. Ct. at 1588.

In contrast, the suit in *CIC Services* was permitted to proceed because the complaint there challenges a reporting requirement that "is not a tax," the suit "brings no legal claim against the separate statutory tax," and the "compliance costs" associated with the reporting requirement are "not tied to ... any tax." 141

S. Ct. at 1590-91. The suit here is far different because its main objective is to prevent enforcement of the Digital Advertising Gross Revenues Tax Act (J.A.13 ¶1), and the suit's claim in Count IV regarding the pass-through prohibition is subsidiary to, intertwined with, and entirely contingent upon plaintiffs' challenge to the tax itself. Or as plaintiffs' counsel put it, "the pass-through prohibition is baked into this very act" as "part of the act itself that we're challenging and so there can be no denying that the legislature intended to ensure that the [intended taxpayers] are the ones that paid this assessment." (J.A.90.) For example, the "compliance costs" associated with the pass-through prohibition are unquestionably "tied to" and determined by the amount of the digital ad tax. *CIC Servs.*, 141 S. Ct. at 1591. The challenge to the pass-through prohibition is contingent upon whether the digital ad tax is upheld, because if the tax is declared unconstitutional or enjoined, plaintiffs and their members "will never have to worry about" the pass-through prohibition. *Id.* Therefore, the analysis in *CIS Services* calls for dismissal of this suit in its entirety.

The three decisions cited by the district court (J.A.176 n.7) do not contradict this conclusion. In all three cases, a challenge to a pass-through prohibition was permitted to proceed, notwithstanding the TIA, because there was "nothing about [the] lawsuit that seeks to avoid paying taxes or to limit the amount of taxes due." *BellSouth Telecomm., Inc. v. Farris*, 542 F.3d 499, 501 (6th Cir. 2008); *see Mobil*

*Oil Corp. v. Tully*, 639 F.2d 912, 918 (2d Cir. 1981)("[T]he plaintiffs 'do not challenge the imposition of the tax, or the rate of the tax, or the allocation formula on the collection of the tax.'"); *Mobil Oil Corp. v. Dubno*, 639 F.2d 919, 922 (2d Cir. 1981) ("[T]he district court was not barred ... because these actions did not seek to restrain the assessment, levy or collection of a tax."). The same cannot be said of the suit here.

## III. COMITY CALLS FOR DISMISSAL OF THIS SUIT.

If the Court does not conclude that the TIA bars this action or some part of it, then the Court should still order the entire case dismissed on grounds of comity. The TIA is only "a partial codification of the federal reluctance to interfere with state taxation," *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n*, 515 U.S. 582, 590 (1995), and the comity doctrine is even "more embracive" than the TIA, *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 417, 424 (2010). Comity "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction," a "constraint" that "has particular force when lower federal courts are asked to pass on the constitutionality of state taxation of commercial activity." *Id.* at 421.

Thus, even where the TIA does not preclude jurisdiction, "principles of federalism and comity generally counsel that courts should adopt a hands-off approach with respect to state tax administration." *National Private Truck*

*Council*, 515 U.S. at 586. For example, in *Direct Marketing*, 575 U.S. at 15, the Court concluded that plaintiffs' suit challenging a state's notice and reporting requirement did not seek to restrain assessment or collection of a tax within the meaning of the TIA, but the Court left open the question whether comity required dismissal of the suit.[8]

For these reasons, if the Court has reservations about whether the TIA bars this action, it "has flexibility to choose among threshold grounds for dismissal," including comity. *Levin*, 560 U.S. at 432. Under the comity doctrine, "federal courts refrain from 'interfer[ing] ... with the fiscal operations of the state governments ... in *all* cases where the Federal rights of the persons could otherwise be preserved unimpaired'" through remedies available under state law. *Direct Mktg.*, 575 U.S. at 15 (quoting *Levin*, 560 U.S. at 422 (brackets and ellipses in original; emphasis added)).

Because this "background presumption" of noninterference preexisted the enactment of 42 U.S.C. § 1983, the Supreme Court has held "that Congress did not authorize injunctive or declaratory relief under § 1983 in state tax cases when there

---

[8] On remand to the Tenth Circuit in *Direct Marketing*, Colorado's taxing authority "'affirmatively waived reliance on the comity doctrine,'" *Direct Mktg. Ass'n v. Brohl*, 814 F.3d 1129, 1134 n.7 (10th Cir. 2016) (citation omitted), but only because the harm to the state that comity seeks to avoid had been done already while the case had "been pending for five years in federal court." Appellants' Suppl. Br., No. 12-1175, 2015 WL 2337625, at *74-*75 (10th Cir. May 13, 2015).

is an adequate remedy at law" provided by the State.  *National Private Truck Council*, 515 U.S. at 588; *McNary*, 454 U.S. at 116 (same).  Nowhere has the Supreme Court suggested that a federal court might evade this limitation on § 1983 relief merely by choosing to treat a challenged state tax as something other than a tax.  For example, in *Levin* the Supreme Court concluded that comity barred a challenge to a State's scheme imposing various types of charges on gross receipts, where the State provided an adequate remedy, *Levin*, 560 U.S. at 426, but the Court's analysis did not question whether the charges were taxes or fees or penalties or any other sort of charge.[9]  Thus, the only question that need be answered is whether applicable state laws provide an adequate remedy, which Maryland law does, as this Court has held.  *Gwozdz*, 846 F.3d at 740.

The district court here rejected the State's argument that comity called for dismissal of the entire amended complaint, including Count IV, based on the court's belief that "plaintiffs' requested relief" regarding the pass-through prohibition in Tax-General § 7.5-102(c) "would not interfere with the State of Maryland's taxing power."  (J.A.176 n.7.) The district court's understanding was

---

[9] In a case decided before the Supreme Court's decision in *Levin*, *DIRECTV, Inc. v. Tolson*, 513 F.3d 119 (4th Cir. 2008) (holding comity required dismissal of suit challenging state's gross receipts tax on cable and satellite television providers), the opinion responded to plaintiff's argument by discussing whether the challenged charge was a tax or a fee and concluding that it was a tax, *id.* at 125-26. But the sole authority cited for the tax vs. fee analysis was *Valero*, 205 F.3d at 134, a TIA case that contains no mention of comity.

35

incorrect, however, because in adopting the pass-through prohibition, the legislature exercised the State's power to regulate tax incidence, which is inherent in the power to tax, *Helvering v. National Grocery Co.*, 304 U.S. 282, 286-87 (1938), and the Supreme Court has long recognized that nothing in the Constitution prevents a State from exercising this power through tax legislation, *see, e.g.*, *International Harvester Co. v. Wisconsin Dep't of Taxation*, 322 U.S. 435, 441 (1944) ("Nor do we perceive any constitutional obstacle ... to the state's distributing the burden of the tax ratably among" the class of taxpayers it chooses to bear the tax.). Plaintiffs' challenge to the pass-through prohibition seeks to countermand this exercise of the State's taxing power. Consequently, comity counsels dismissal.

## IV.    THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN WITHHOLDING INJUNCTIVE AND DECLARATORY RELIEF AND DISMISSING COUNT IV AS PRUDENTIALLY MOOT IN LIGHT OF THE JUDGMENT IN A PARALLEL STATE COURT PROCEEDING THAT IS PENDING APPEAL.

After being informed by plaintiffs that the Circuit Court for Anne Arundel had declared the Act unconstitutional (J.A.271-74), the district court sought input from the parties before ordering the remainder of the amended complaint dismissed as prudentially moot. In doing so, the court acted well within its "discretionary power to withhold injunctive and declaratory relief for prudential reasons, even in a case not constitutionally moot . . . ." *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir.

1987).  The district court found that, in light of the state court judgment declaring the digital ad tax unconstitutional and the pendency of that judgment on appeal, dismissal of the remaining Count IV was warranted due to the same "prudential concerns" that led the Court in *Spangler* to withhold declaratory and injunctive relief:  (1) "the specific relief sought here no longer has sufficient utility to justify decision of this case on the merits," (2) "the difficulty and sensitivity of the constitutional issue at the core of this controversy," and (3) the unlikelihood that, under the circumstances, the issues raised by plaintiffs "are capable of repetition yet likely to evade review"  *Id.* at 297-98.  (J.A.34-35.)  Those were the considerations the Court in *Spangler* found most pertinent to the circumstances it faced when, during the pendency of an appeal, plaintiffs settled with one of the three government defendants and thereby secured much, though not all, of the relief sought.

The district court did not abuse its discretion in concluding that these prudential concerns warranted dismissal, without prejudice, of plaintiffs' remaining challenge to the Act's direct pass-through prohibition.  Under the abuse of discretion standard, this Court does not "'substitute its judgment for that of the district court,'" *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022) (citation omitted), but will "ensure that the district court has not acted arbitrarily or irrationally, has followed the statutory requirements, and has conducted the

37

necessary analysis for exercising its discretion," *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). Plaintiffs do not assert that the district court's prudential mootness analysis was arbitrary or irrational; they do not identify any statutory requirement the court failed to follow; and they acknowledge that the court applied what this Court considered to be "the necessary analysis" in *Spangler*, 832 F.2d at 297-98. Instead, plaintiffs try to discredit that analysis by asserting that "prudential mootness is a doctrine that has been narrowed significantly by the Supreme Court in recent cases" and "is today a doctrine of questionable vitality." Br. 19. But they do not support those assertions with any citation of a Supreme Court decision addressing prudential mootness, nor any decision from any court rejecting the prudential mootness principles this Court applied in *Spangler*. Otherwise, plaintiffs suggest that it was somehow improper for the district court to dismiss for prudential mootness *sua sponte*, but that is precisely what the Court did in *Spangler*, 832 F.2d at 297 (noting that "neither party asserts mootness").

In this case especially, where a challenge to state tax legislation implicates "principles of federalism and comity generally counsel[ing] that courts should adopt a hands-off approach with respect to state tax administration," *National Private Truck Council*, 515 U.S. at 586, the district court was on firm footing in declining to exercise its authority to grant declaratory and injunctive relief. Both forms of relief are discretionary and not guaranteed as of right, even if a plaintiff

might otherwise prevail on the merits. "This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief," and "district courts are 'under no compulsion' to exercise jurisdiction over [a] declaratory judgment action." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 296-97 (4th Cir. 2005) (citations omitted). The discretion to withhold declaratory relief "is especially crucial when, as here, a parallel or related proceeding is pending in state court," and "[i]n such situations federal courts must weigh 'considerations of federalism, efficiency, and comity.'" *Id.* at 297 (citations omitted).

Similarly, "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course," and "'a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.'" *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008) (citation omitted). In weighing the considerations that guide whether to grant an injunction,[10] courts have recognized that the "public interest" factor may require assessment of whether an injunction would "serve[] the public interest in comity

---

[10] For the permanent injunction requested here, these considerations include (1) "'actual success' on the merits," (2) "'irreparable injury,'" (3) whether "'remedies available at law ... are inadequate," (3) "'the balance of hardships,'" and (4) whether "'the public interest would ... be disserved by a permanent injunction.'" *Azar*, 973 F.3d at 274 (citations omitted); *see id.* (finding "no abuse of discretion" where a district court "did not discuss the test for granting a permanent injunction" but the factors supported its decision).

between the state and federal judiciaries." *Dixon v. City of St. Louis*, 950 F.3d 1052, 1056 (8th Cir. 2020), *as corrected* (Mar. 23, 2020); *accord Doe v. Sundquist*, 106 F.3d 702, 707 (6th Cir. 1997); *In re SDDS, Inc.*, 97 F.3d 1030, 1040-41 (8th Cir. 1996).

Under these principles, "'considerations of federalism, efficiency, and comity,'" including "comity between the state and federal judiciaries," fully support the district court's decision to dismiss without prejudice in light of a state court challenge to the Act now pending in Maryland's highest court.

**V.    THIS COURT'S PRACTICE IS TO AVOID ADDRESSING THE MERITS WHERE THE DISTRICT COURT DID NOT ADDRESS THEM, BUT IF THE COURT DEPARTS FROM THAT PRACTICE, IT SHOULD REJECT PLAINTIFFS' FIRST AMENDMENT CLAIM.**

### A.    This Case Presents No Reason for the Court to Depart from Its Customary Practice.

This Court's usual practice is to refrain from addressing the merits when, as here, the district court did not rule on them.  *GenOn*, 650 F.3d at 1026; *Porter*, 852 F.3d at 366; *accord Sanchez v. Office of the State Superintendent of Educ.*, 959 F.3d 1121, 1126 (D.C. Cir. 2020); *Freed v. Thomas*, 976 F.3d 729, 741 (6th Cir. 2020) ("[T]he trial court is in the best position to resolve any dispositive issues on the merits in the first instance because it is most familiar with the factual and procedural background of this action.").  Plaintiffs cite *Perry v. Bartlett*, 231 F.3d 155, 160 (4th Cir. 2000), Br. 23, but *Perry* does not contradict the general rule

applied more recently in *GenOn* and *Porter*, because in *Perry* the district court addressed the merits of the relief requested. *Id.*, 231 F.3d at 158.

Plaintiffs argue that this Court should rule on the merits of their First Amendment claim because it is "urgent and purely legal," Br. 23, but it is neither. It is not "urgent," given that two years have elapsed, without plaintiffs moving for preliminary injunctive or other emergency relief, and they did not seek expedited proceedings below. *See Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (holding that "years-long delay in asking for preliminary injunctive relief weighed against" plaintiffs' belated request for emergency relief).

Nor would adjudication of their claim involve only "purely legal" questions. Plaintiffs' counsel makes representations that members of the plaintiff organizations are being chilled in their ability to communicate "facts about [estimated digital tax] remittances in customer communications like invoices and statements," Br. 18, but plaintiffs lack firsthand knowledge of whether any companies are experiencing any such "chill," since plaintiffs have denied having "detailed knowledge" of their members' circumstances. ECF 48, at 2. This Court requires more than "hypothetical or imaginary cases" to satisfy the "high bars" of the requisite threshold showing for mounting a facial challenge to the Act: "that 'no set of circumstances exists under which the Act would be valid,' ... or 'that the statute lacks any plainly legitimate sweep.'" *United States v. Miselis*, 972 F.3d

518, 530 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2756 (2021), *and cert. denied sub nom. Daley v. United States*, 141 S. Ct. 2756 (2021) (citations omitted).[11] Rather, the Court would need "precise facts" to ensure that any "rule of constitutional law" that emerges from this case is no "broader" than those facts. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). But plaintiffs insist on proceeding solely based on hypothetical invoices their counsel has imagined. *See* Br. 26-27. Such a lack of sufficiently "precise facts" in the record has been deemed reason enough to remand a facial challenge for further district court proceedings. *See Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. City of Baltimore*, 721 F.3d 264, 282 (4th Cir. 2013) (remanding for discovery "as a precursor to any true facial analysis").

## B. If the Court Reaches the Merits, the Direct Pass-Through Prohibition Regulates Conduct and Does Not Offend the First Amendment.

If the Court does depart from its usual practice and considers the merits, it should reject plaintiffs' First Amendment facial challenge, for at least five reasons:

---

[11] The Fourth Circuit recognizes only one exception to this requirement, and that applies only when plaintiffs bring a First Amendment overbreadth challenge, which the plaintiffs here chose not to bring. *Miselis*, 972 F.3d at 530-31 (citations omitted).

### 1. The Direct Pass-Through Prohibition Regulates Conduct, Not Speech.

Using plain language, the Act prohibits a covered taxpayer from "directly pass[ing] on the cost of the tax ... to a customer ... by means of a separate fee, surcharge, or line-item." Tax-Gen. § 7.5-102(c). Thus, it regulates the taxpayer's ability to engage in *conduct* that directly imposes on a customer the cost of the digital ad tax paid by the taxpayer, and thereby renders the customer liable for payment of the tax. Tax-General § 7.5-102(c) raises no First Amendment concerns because it does not purport to regulate the taxpayer's speech. This is the conclusion reached in the only two decisions identified by either party where the courts addressed a First Amendment challenge to a tax pass-through prohibition.

In *BellSouth*, 542 F.3d at 506, the Sixth Circuit rejected a First Amendment challenge to a direct pass-through prohibition clause in a Kentucky statute that imposed a tax on gross revenues of telecommunications providers. That clause of the statute, which the court dubbed "the no-direct-collection clause," "banned providers from 'collect[ing] the tax directly' from consumers...." *Id.* at 500. The court held that "the no-direct-collection clause" "refer[red] to non-expressive conduct, not speech, and as a result [was] beyond the protection of the First Amendment," *id.* at 510. Because the pass-through prohibition, or "no-direct-collection clause," was "[r]egulating only conduct," it was deemed "not unconstitutional on its face...." *Id.* at 511 (citing *Washington State Grange*, 552

43

U.S. at 449).  A separate part of the *BellSouth* decision addressed a different clause in the same statute—a so-called "no-stating-the-tax clause," *id.* at 504—which prohibited taxpayers from "'separately stat[ing] the tax on the bill,'" *id.* at 500. The court held that, unlike the "no-direct collection clause," the "no-stating-the-tax clause" "regulated speech, not conduct."  *Id.* at 506.  Though the court struck down the "no-stating-the-tax clause" as a restriction on speech, it upheld the direct pass-through prohibition against a First Amendment challenge.

The other pertinent decision, *Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847, reached a similar conclusion.  Like Maryland's direct pass-through provision, Washington's statute "prevent[ed] [a business] from passing the tax on to its customers" directly.  *Id.* at 852.  Also, like Maryland's law, but unlike Kentucky's, Washington's statute "sa[id] nothing about disclosure," *id.* at 853, and the plaintiff business was therefore "free to inform" a customer that a certain amount "of his final purchase price would be used to pay for the ... tax," *id.* at 852.  In rejecting the challenge, *Nelson* found that a taxpayer violated the statute if its billing "practice" effectively "treated the ... tax as a tax on customers."  *Id.* at 850.  The court held that "[t]he First Amendment ... will not insulate [a taxpayer's] illegal

practice of making customers bear [that taxpayer's] tax burden" by directly "passing the tax on to its customers."[12] *Id.* at 852.

The Maryland Act withstands a First Amendment challenge for the same reasons that applied to the direct pass-through prohibitions upheld in *BellSouth* and *Nelson*. Both of those statutes, like Maryland's, prohibited direct pass-through of tax costs, but permitted taxpayers to factor those costs into their pricing or overhead. *BellSouth*, 542 F.3d at 510; *Nelson*, 157 P.3d at 850. Like Washington's statute, Maryland's lacks the "no-stating-the-tax" feature of the Kentucky statute that restricted speech in violation of the First Amendment. Nothing in the Act purports to restrict what a taxpayer may say to the customer, or anyone else, about the tax or any other subject. Instead, Maryland's statute identifies the conduct constituting "directly pass[ing] on the cost of the tax," by specifying that a pass-through is proscribed if accomplished "by means of a separate fee, surcharge, or line-item." Tax-Gen. § 7.5-102(c). This specification of prohibited conduct does not, as plaintiffs suggest, convert the statute into a restriction of speech. Rather, it supplies the "minimal guidelines" and "reasonable

---

[12] *Nelson* distinguished *Bloom v. O'Brien*, 841 F. Supp. 277, 278-79 (D. Minn. 1993), on which plaintiffs rely, Br. 34, because in *Bloom* "[t]he Minnesota Legislature specifically allowed health care tax to be passed through to patients but forbade doctors from informing patients about the tax," whereas Washington's statute, like Maryland's, "says nothing about disclosure." *Nelson*, 157 P.3d at 852-53.

notice of the proscribed conduct" that prevent a statute from being unconstitutionally vague. *Recht v. Morrisey*, 32 F.4th 398, 415 (4th Cir. 2022) (citation omitted). On the other hand, neither Tax-General § 7.5-102(c) nor any other provision of the Act contains any language prohibiting anyone from "separately stat[ing] the tax," *BellSouth*, 542 F.3d at 500, or mentioning any other facts pertinent to the tax, whether on an invoice or anywhere else. Thus, Maryland's statute does not contain anything like the kind of restriction found to implicate First Amendment concerns in the part of *BellSouth* that addressed a "no-stating-the-tax" requirement. *Id.* at 506.

Plaintiffs try to distinguish Maryland's direct pass-through prohibition from the one upheld in *BellSouth* by emphasizing that § 7.5-102(c) does not prohibit a taxpayer from "'indirectly passing on the cost'" of the tax "'by factoring such cost into its customer pricing.'" Br. 24-25 (quoting J.A.178). But the same was true of the Kentucky statute in *BellSouth*, 542 F.3d at 510, and the Washington statute in *Nelson*, 157 P.3d at 850. Plaintiffs also argue that, by prohibiting only direct pass-through and allowing taxpayers to factor the tax into pricing, the Act "only 'regulates how sellers may communicate their prices' on invoices," Br. 25 (citation omitted). But that assertion wrongly assumes there is no economic difference between direct pass-through of tax cost and "factoring" into pricing. The State has cited economic research—undisputed by plaintiffs—demonstrating that typically

46

when a company factors a tax into prices, customers end up paying little to nothing

of the tax cost.[13]

### 2. Plaintiffs Have Failed to Make the Threshold Showing for a Facial Challenge.

Plaintiffs' facial challenge fails to satisfy the required threshold showing that

"no set of circumstances exists under which [the pass-through prohibition] would

be valid, or that the [pass-through] prohibition lacks any plainly legitimate sweep."

*Miselis*, 972 F.3d at 530 (citations omitted). The "sweep" of Maryland's digital ad

tax direct pass-through prohibition is no less "plainly legitimate" than the direct

pass-through prohibitions upheld in *BellSouth* and *Nelson*. And far from showing

that the Act "would be valid" under "no set of circumstances," *Miselis*, 972 F.3d at

530, both the amended complaint (J.A. 32-33, ¶¶95-96) and plaintiffs' briefing

below, ECF 31-1 at 56; ECF 47 at 19, acknowledged that § 7.5-102(c) is

susceptible to a plausible interpretation that it regulates not speech but *conduct*.

Contrary to plaintiffs' suggestion, ECF 82 at 3-4, the need to make this threshold

showing is not automatically satisfied or excused whenever plaintiffs allege a

---

[13] ECF 81 at 14-16 (citing International Monetary Fund, "Estimating VAT Pass Through" (Sept. 2015) ("IMF") at 16, https://www.imf.org/en/Publications/WP/Issues/2016/12/31/Estimating-VAT-Pass-Through-43322; Werner Antweiler, "Tax Pass-through for Beginners," (Sept. 29, 2018) ("Antweiler"), https://wernerantweiler.ca/blog.php?item=2018-09-29 (citing E. Glen Weyl and Michael Fabinger, "Pass-Through as an Economic Tool: Principles of Incidence Under Imperfect Competition," *Journal of Political Economy* 121(3) (June 2013) at 528-283)).

content-based restriction. *See Greater Baltimore Ctr. for Pregnancy Concerns*, 721 F.3d at 282 (demanding compliance with threshold requirement in facial challenge to assertedly content-based restriction); *United States v. Chappell*, 691 F.3d 388, 392-94 (4th Cir. 2012) (same).

### 3. At Most § 7.5-102(c) Affects Unprotected Incidental Speech Integral to Unlawful Activity.

"'[T]he First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech.'" *National Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2373 (2018) (citation omitted). When firms "dictate the terms" of transactions, as when they directly impose a cost on a customer, they engage in commercial "practices which both state and national legislation can and do prohibit" in certain circumstances, even if the "course of conduct" is "in most instances brought about through speaking or writing." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 495 (1949) (citing cases). Thus, directly billing a charge constitutes commercial conduct that may be regulated without implicating the First Amendment. *See*, *e.g.*, *United States v. McLean*, 715 F.3d 129, 138 (4th Cir. 2013) (affirming health-care-fraud conviction based on "billing for medically unnecessary procedures"); *United States v. De Leon*, 728 F.3d 500, 507 (5th Cir. 2013) (affirming health-care-fraud convictions where "[t]he *conduct* charged" in the indictment "related only to (1) *billing* before delivery, (2) *billing* for new [wheelchairs] but delivering cheaper substitutes, and

(3) *billing* for diabetes supplies that were not delivered." *Id.* at 507) (emphasis added).

Such restrictions on commercial conduct do not implicate First Amendment protections, where "the law's effect on speech would be only incidental to its primary effect on conduct."[14] *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017). The Supreme Court lists "speech integral to" unlawful conduct among "'the classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.'" *United States v. Stevens*, 559 U.S. 460, 468-69 (2010) (citing, *inter alia*, *Giboney*, 336 U.S. at 498); *see National Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 697-98 (1978) (applying *Giboney* in civil antitrust action).

As applicable here, Maryland's pass-through provision renders unlawful the conduct of "directly pass[ing] on the cost" of the digital ad tax, notwithstanding its impact on incidental speech used in the process of "directly pass[ing] on the cost." Section § 7.5-102(c)'s language ensures that the statute constrains a taxpayer's

---

[14] *Expressions Hair Design* reaffirmed this principle but found it inapplicable because the Court deemed the challenged statute "different" from other regulations, 581 U.S. at 47, for reasons that do not pertain to Maryland's Act. New York's provision on credit surcharges did not establish or limit the permissible amount of surcharges and said "nothing about the amount [merchants] are allowed to collect." *Id.* Maryland's Act establishes the applicable tax rates, while effectively specifying "zero" as the amount of tax cost a taxpayer may directly charge a customer.

speech only if and to the extent it is "integral to," *Stevens*, 559 U.S. at 468, the unlawful conduct of direct pass-through. That is, the statute does not apply to a "separate fee, surcharge, or line-item" unless it is the "means" "by" which a taxpayer "directly pass[es] on the cost" of the digital ad tax, § 7.5-102(c), and, therefore, whatever speech the "separate fee, surcharge, or line-item" contains is "integral to" the commercial conduct proscribed by the statute, *Stevens*, 559 U.S. at 468. Aside from this incidental effect on speech used to effectuate the direct pass-through, nothing in the statute would even arguably restrict speech.

### 4.    Content-based and Political Speech Analyses Do Not Apply.

The pass-through prohibition regulates conduct, not speech, but if directly charging someone the tax were construed as speech, Maryland's statute would not be subject to strict scrutiny as a content-based restriction or restriction of political speech.

First, if charging someone a tax "by means of a separate fee, surcharge, or line-item," Tax-Gen. § 7.5-102(c), were construed to be speech, the "content" would be government speech, because the Act—"by determining the amount charged—would indirectly dictate the content of that speech," *Expressions Hair Design*¸581 U.S. at 47. "[T]hat private parties take part in the ... propagation of a message does not extinguish the governmental nature of the message...." *Walker v. Texas Div., Sons of Confederate Veterans, Inc*., 576 U.S. 200, 217 (2015). Such

"government statements ... do not normally trigger the First Amendment rules designed to protect the marketplace of ideas." *Id.*

Second, in no case cited by plaintiffs has a court applied content restriction or political speech analysis or strict scrutiny to a pass-through prohibition. *See Expressions Hair Design*, 581 U.S. at 47 (remanding for further consideration under intermediate scrutiny/commercial speech and compelled disclosure rubric); *BellSouth*, 542 F.3d at 505-10 (applying *Central Hudson* intermediate scrutiny); *Bloom*, 841 F. Supp. at 281-83 (same).

Third, recently this Court explained that "regulation of commercial speech invokes lessened First Amendment concerns," and "[s]trict scrutiny is therefore improper when reviewing laws that regulate commercial speech.[15]  Instead, we apply the … four-part intermediate-scrutiny analysis from *Central Hudson*." *Recht*, 32 F.4th at 405, 408.  "To be clear: Commercial speech regulations are analyzed under *Central Hudson*," even when a plaintiff asserts that a commercial speech regulation is content-based. *Id.* at 409. (The Supreme Court has "applied the *Central Hudson* framework to a concededly 'content-based law.'") (citation omitted).

---

[15] If the pass-through prohibition implicates speech at all, other than speech integral to unlawful conduct and government speech, then it is commercial speech. *See Wag More Dogs LLC v. Cozart*, 680 F.3d 359, 369-70 (4th Cir. 2012) (reaffirming "broader definition of commercial speech").

*Recht* expressly rejected a content-based restriction argument invoking *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), on which plaintiffs rely, Br. 24, 27-28, 31, because "*Reed* involved a sign code that regulated non-commercial speech," specifically, "ideological signs, political signs, and signs directing the public to nonprofit gatherings," "so it never needed to mention commercial speech or any precedents in that vein." *Recht*, 32 F.4th at 409; *see id.* at 405 (upholding challenged regulation under *Central Hudson* intermediate scrutiny).

Moreover, the Supreme Court recently instructed courts not to give *Reed* the expansive reading plaintiffs advocate. *City of Austin v. Reagan Nat'l Advertising of Austin, LLC*, 142 S. Ct. 1464, 1471, 1474 (2022) (rejecting as "too extreme" the "view that *any* examination of speech or expression inherently triggers heightened First Amendment concern," and similarly rejecting the notion "that any classification that considers function or purpose is *always* content based") (emphasis in original).

Finally, the Act does not restrict political speech. Even if a taxpayer might intend that its conduct of directly passing on its digital ad cost will implicitly communicate a message assigning "political responsibility" for that cost, Br. 25, doing so will "'not inherently express[]'" such an idea to a customer receiving an invoice. *Arkansas Times LP v. Waldrip*, 37 F.4th 1386, 1392 (8th Cir. 2022) (en banc) (rejecting First Amendment challenge to prohibition against state contracts

with companies boycotting Israel) (citation omitted).  A customer "would have no way of knowing" that a political message was intended, because the company's reasons for imposing a charge "are invisible to observers unless explained." *Id.*, 37 F.4th at 1392, 1394.  "[T]he question [i]sn't whether [the billing company] *intend*[s] to express an idea, but whether a neutral observer would *understand* that they're expressing an idea." *Arkansas Times*, 37 F.4th at 1392 (brackets supplied; emphasis in original).  The plaintiffs here have made no attempt to establish customers' perception of a digital ad tax cost directly passed on to them for payment.  Under the Act, however, a taxed company is free to offer whatever explanation it wishes.

### 5.    The Act Withstands *Central Hudson* Analysis.

Maryland's law withstands intermediate scrutiny because *Central Hudson* makes clear that "[t]he government may ban ...commercial speech related to illegal activity," 447 U.S. at 563-64, and under *Central Hudson*'s threshold test, to be protected by the First Amendment commercial speech "must concern lawful activity," *id.*, 447 U.S. at 566.  The Act prohibits "directly pass[ing] on" the digital ad tax, Tax-Gen. § 7.5-102(c), and thereby makes that activity unlawful.  As already explained, any speech "integral to" that unlawful activity is not protected by the First Amendment.  Therefore, plaintiffs' challenge cannot overcome *Central*

*Hudson*'s threshold inquiry, and the Court "likely need proceed no further."[16] *Recht*, 32 F.4th at 412. However, as the State amply demonstrated below, *see* ECF 81, the Act's constitutionality is confirmed by the other three *Central Hudson* factors, which are (1) a "substantial" government interest that the Act (2) "directly advances" (3) in a way that is "not more extensive than is necessary" to serve those interests. 447 U.S. at 566.

Legislative history confirms the State's substantial interest in exercising its police powers to enact a tax needed to fund education, one that is equitable to all Maryland taxpayers, and whose cost will be borne, to the extent possible, by prosperous companies, not their customers. ECF 81 at 5-11. The pass-through prohibition directly advances the substantial interest, since it was enacted in response to threats that the tax would be passed on to customers and other residents to their economic detriment. *Id.* at 13. (J.A. 408-28.) It addresses that problem by ensuring that initially the tax is borne by the intended taxpayer, and no one else. Taxed companies may factor the tax into their costs, but according to economic studies, the direct pass-through prohibition results in customers paying much less

---

[16] Plaintiffs tried to overcome this obstacle by relying on *BellSouth*'s treatment of *Central Hudson*, ECF 85 at 3 (citing *BellSouth*, 542 F.3d at 506), but *BellSouth* upheld Kentucky's analogous pass-through prohibition without subjecting it to intermediate scrutiny, *id.* at 510, and applied *Central Hudson* only to the "no-stating-the-tax" provision, *id.* at 505-510, which Maryland's statute lacks.

of the companies' tax costs than they otherwise would. ECF 81 at 14-17 (citing IMF at 16; Antweiler). This solution provides "a fit that is reasonable ... in proportion to the interest served," which is all the fourth factor requires. *Educational Media Co. v. Insley*, 731 F.3d 291, 300 (4th Cir.) (citation omitted).

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Steven M. Sullivan

_____

JULIA DOYLE BERNHARDT
STEVEN M. SULLIVAN
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
jbernhardt@oag.state.md.us
ssullivan@oag.state.md.us
(410) 576-7291
(410) 576-6955 (facsimile)

Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 12,977 words, excluding the parts of the brief exempted by Rule 32(f).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Steven M. Sullivan

_____

Steven M. Sullivan

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, *et al.*, | * | |
| | * | No. 22-2275 |
| *Plaintiffs-Appellants*, | | |
| v. | * | |
| BROOKE LIERMAN, | * | |
| *Defendant-Appellee*. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**CERTIFICATE OF SERVICE**

I certify that, on this 23rd day of February, 2023, the Brief of Appellee was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Steven M. Sullivan

_____

Steven M. Sullivan