

**mwe.com**

Michael B. Kimberly
Attorney at Law
mkimberly@mwe.com
+1 202 756 8901

July 19, 2023

VIA ELECTRONIC FILING

Patricia S. Connor, Clerk of Court
U.S. Court of Appeals for the Fourth Circuit

      Re:    *Chamber of Commerce of the United States v. Brooke Lierman*, No. 22-2275

Dear Ms. Connor,

I write pursuant to Appellate Rule 28(j) to bring the Court's attention to the Maryland Supreme Court's recent decision in *Comptroller v. Comcast of California/Maryland/Pennsylvania/Virginia/West Virginia LLC*, No. 22-327. A copy of the opinion is attached.

In short, the Maryland Supreme Court has vacated the Maryland Superior Court's judgment declaring the Digital Advertising Gross Revenues Tax Act unlawful. The court rested its decision exclusively on state procedural grounds, without addressing the merits of the plaintiffs' claims or the punitive nature of the Act's levy.

In the case before this Court, the district court dismissed appellants' challenge to the Act's speech ban on the ground that it was mooted by the Maryland Circuit Court's declaration that the Act's levy is unlawful. *See* JA433-436. As we showed in the opening brief (at 15-23, 37-38), the claim was not mooted by the state court's ruling for a range of reasons, including the possibility of an appellate reversal. Now that that possibility has come to pass, there is no longer any basis for the State to defend the district court's holding. Indeed, because the state court's declaration has been vacated for want of jurisdiction, there is no longer any basis to assert that *any* aspect of the case is moot. And the present absence of any declaratory relief highlights the need for expeditious resolution of the First Amendment issue.

The Court accordingly should reverse with instructions to the district court to enter judgment for appellants on their First Amendment claim and to resolve the merits of their challenges to the Act's levy.

Sincerely,

/s/ *Michael B. Kimberly*



**500 North Capitol Street, NW Washington DC 20001-1531 Tel +1 202 756 8000 Fax +1 202 756 8087**

*US practice conducted through McDermott Will & Emery LLP.*

Circuit Court for Anne Arundel County
Case No. C-02-CV-21-000509
Argued:  May 5, 2023

IN THE SUPREME COURT

OF MARYLAND*

No. 32

September Term, 2022

_____

COMPTROLLER OF MARYLAND

v.

COMCAST OF CALIFORNIA, MARYLAND,
PENNSYLVANIA, VIRGINIA, WEST
VIRGINIA, LLC, et al.

_____

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed: July 12, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland.  The name change took effect on December 14, 2022.

This appeal arises from a challenge to Maryland's Digital Advertising Gross Revenues Tax Act, codified at Title 7.5 of the Tax-General Article. The Act, which was enacted in 2021 and became effective on January 1, 2022, imposes a tax on annual gross revenues of certain high revenue businesses derived from digital advertising services in the State. In the Circuit Court for Anne Arundel County, the challengers, various subsidiaries of Comcast Corporation and Verizon Communications Inc. (collectively, the "Companies"),[1] obtained a declaratory judgment that the digital advertising tax was unconstitutional and illegal under federal law. The Comptroller timely appealed, arguing, among other things, that the Companies did not exhaust the comprehensive administrative remedies provided in the Tax-General Article for resolution of tax disputes. We granted certiorari before decision in the Appellate Court of Maryland.[2]

In a per curiam order issued after oral argument, we vacated the orders of the circuit court, held that the circuit court lacked jurisdiction over the action because the Companies failed to exhaust the mandatory administrative and judicial review remedies provided in the Tax-General Article for the resolution of tax disputes, and remanded to the circuit court with directions to dismiss the action. *Comptroller v. Comcast of California, Maryland,*

---

[1] The challengers, the plaintiffs below and appellees here, are Comcast Cable Communications Management, LLC, Comcast of Maryland Limited Partnership, Comcast of Baltimore City, LLC, Comcast of California/Maryland/Pennsylvania/Virginia/West Virginia, LLC, Comcast of Delmarva, LLC, Comcast of Maryland, LLC, Comcast of Potomac, LLC, and Verizon Maryland LLC.

[2] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

*Pennsylvania, Virginia, West Virginia, LLC*, ___ Md. ___, 2023 WL 3313208 (May 9, 2023) (per curiam). In this opinion, we explain the basis for our order. As will be apparent from our discussion, our resolution is not premised on any view of the merits of the challenges raised by the Companies.

## BACKGROUND

### A.     *The Digital Advertising Gross Revenues Tax Act*

Title 7.5 of the Tax-General Article imposes a tax on annual gross revenues of more than $1 million derived from digital advertising services in the State by certain businesses[3] with at least $100 million in global annual gross revenues. Md. Code Ann., Tax-Gen. §§ 7.5-103; 7.5-201(a) (2022 Repl.). "Digital advertising services" generally include "advertisement services on a digital interface, including . . . banner advertising, search engine advertising, interstitial advertising, and other comparable advertising services." *Id.* § 7.5-101(e)(1). The tax rate is progressive, beginning at 2.5% for entities with global annual revenues between $100 million and $1 billion, and topping out at 10% for businesses with global annual revenues exceeding $15 billion. *Id.* § 7.5-103. The tax rate is calculated based on an entity's global annual revenues but is then applied only to the entity's annual gross revenues derived from digital advertising services in Maryland. *Id.* §§ 7.5-102; 7.5-101(c).

The digital advertising tax applies to taxable years beginning after December 31, 2021. 2021 Md. Laws ch. 669, § 6. Thus, the first year in which digital advertising services

---

[3] The tax does not apply to advertising services on digital interfaces owned or operated by a broadcast or news media entity. *Id.* § 7.5-101(d), (e)(2), (g).

2

were taxed was 2022, and the first tax returns on which the digital advertising tax had to be reported were due in April 2023.

### B.    Factual Background

The Companies provide digital advertising services in Maryland. Because their global revenues are over the statutory threshold, they are subject to the digital advertising tax. The Companies have neither paid the tax nor explicitly declined to pay the tax.

### C.    Procedural Background

Without first pursuing any administrative remedies, the Companies filed a complaint for declaratory judgment in the Circuit Court for Anne Arundel County in which they sought a declaration that the digital advertising tax is unconstitutional and illegal under federal law. Specifically, as stated in their amended complaint, the Companies contend that the digital advertising tax violates the United States Constitution's Commerce Clause and First Amendment, as well as the Internet Tax Freedom Act, 47 U.S.C. § 151 note, a federal statute that bans states from imposing discriminatory taxes on electronic commerce.

The Comptroller moved to dismiss the Companies' complaint, arguing, among other things, that the circuit court lacked jurisdiction over the action because the Companies had failed to exhaust their administrative remedies. The Companies responded that their declaratory judgment action was permitted by a constitutional exception to the exhaustion requirement. Following a hearing, the court agreed with the Companies and denied the Comptroller's motion to dismiss.

3

The Comptroller and the Companies each thereafter filed motions for summary judgment. The Comptroller again argued that the circuit court lacked jurisdiction over the action because the Companies had failed to exhaust administrative remedies. The Companies restated their argument that the digital advertising tax violates the Constitution and the Internet Tax Freedom Act, and sought a declaration to that effect. The court again agreed with the Companies, granted their motion for summary judgment, and denied the Comptroller's motion. In a final declaratory judgment order, the circuit court declared that the "Maryland Digital Advertising Gross Revenues Tax violates the Supremacy Clause of the United States Constitution and the Internet Tax Freedom Act . . . , the dormant Commerce Clause of the United States Constitution . . . , and the First Amendment to the United States Constitution[.]"

The Comptroller timely appealed to the Appellate Court of Maryland and, before decision by that court, sought certiorari from this Court, which we granted. *Comptroller v. Comcast of California/Maryland/Pennsylvania/Virginia/West Virginia, LLC*, 482 Md. 535 (2023).[4]

## DISCUSSION

"Whether a plaintiff must exhaust administrative remedies prior to bringing suit is a legal issue which [this Court] reviews" without deference. *United Ins. Co. of Am. v. Md. Ins. Admin.*, 450 Md. 1, 14 (2016).

---

[4] The Comptroller also filed a Motion to Stay Enforcement Pending Appeal, which we denied.

4

**THE ADMINISTRATIVE REMEDIES IN THE TAX-GENERAL ARTICLE ARE EXCLUSIVE.**

### A.    *Exhaustion of Administrative Remedies Generally*

When the General Assembly enacts legislation giving rise to statutory claims, it frequently also provides for special statutory administrative remedies to be pursued under an administrative scheme, subject to judicial review. *See, e.g.*, Md. Code Ann., State Gov't §§ 20-1001–20-1017 (2021 Repl.; 2022 Supp.) (establishing an administrative scheme applicable to employment discrimination claims); *Id.* §§ 20-1020–20-1037 (same for housing discrimination claims); Md. Code Ann., Lab. & Empl. §§ 9-701–9-750 (2016 Repl.; 2022 Supp.) (same for workers' compensation claims); *Id.* §§ 8-501–8-508, 8-5A-01–8-5A-12 (same for unemployment insurance claims); Md. Code Ann., Tax-Prop. §§ 14-501–14-516 (2019 Repl.; 2022 Supp.) (same for property tax claims); *see also, e.g.*, Md. Code Ann., Local Gov't § 10-305 (2013 Repl.; 2022 Supp.) (authorizing counties to enact local laws to establish county boards of appeals with jurisdiction over, among other things, zoning, licensing, and permitting).

When the General Assembly has provided such "an administrative and judicial review remedy," "the relationship between that administrative remedy and a possible alternative judicial remedy will ordinarily fall into one of three categories." *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 60 (1998). "*First*, the administrative remedy may be exclusive, thus precluding any resort to an alternative remedy." *Id.* Where an administrative remedy is exclusive, the only manner of obtaining judicial involvement is by pursuing judicial review of the final administrative decision.

5

"*Second*, the administrative remedy may be primary but not exclusive." *Id.* at 60. In that circumstance, a claimant may file an action to pursue an alternative judicial remedy, but the "claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy." *Id.*; *see also Monarch Acad. Balt. Campus, Inc. v. Balt. City Bd. of Sch. Comm'rs*, 457 Md. 1, 13 (2017) (stating that just because a claim is properly within the primary jurisdiction of an administrative agency "does not mean that the circuit court is divested of jurisdiction over the claim[], or necessitate[] the dismissal of the action before the court"; instead, the appropriate course of action is to stay proceedings pending '"a final administrative determination"' (quoting *Arroyo v. Bd. of Educ. of Howard County*, 381 Md. 646, 660 (2004))); *State Ret. & Pension Sys. v. Thompson*, 368 Md. 53, 66 (2002) ("[A]lthough the court may well have subject matter jurisdiction over the action before it, the exhaustion doctrine bars the court from exercising that jurisdiction, thereby gratifying the paramount legislative intent that the matter be dealt with first by the Executive Branch agency."). In other words, the claimant maintains the right to pursue an alternative judicial remedy, but generally not until first exhausting the administrative remedy.

"*Third*, the administrative remedy and the alternative judicial remedy may be fully concurrent, with neither remedy being primary[.]" *Zappone*, 349 Md. at 61. In that

circumstance, a claimant need not exhaust available administrative remedies before pursuing an available judicial remedy.[5] *Id.*

Determining whether an available administrative remedy is exclusive, primary to an alternative judicial remedy, or concurrent with an alternative judicial remedy, "is ordinarily a question of legislative intent." *Id.* Although the General Assembly will occasionally "expressly set forth its intent in this regard," "most often statutes fail to specify the category in which an administrative remedy falls," leaving the matter to be resolved through statutory interpretation by the courts. *Id.* at 61-62.

The rationale behind the exhaustion requirement is well-established. An administrative agency has the "expertise which [it] can bring to bear in sifting the information presented to it," and thus "should be afforded the initial opportunity . . . to apply that expertise." *Soley v. Md. Comm'n on Hum. Rels.*, 277 Md. 521, 526 (1976). "[T]o permit interruption for purposes of judicial intervention at various stages of the administrative process might well undermine the very efficiency which the Legislature intended to achieve in the first instance." *Id.* Thus, "where there exists a special statutory remedy for a specific type of case, and the Legislature intends that remedy to be exclusive

---

[5] Whether an administrative remedy is exclusive, primary, or concurrent has nothing to do with the availability of judicial review of the final decision of the administrative agency. The availability of judicial review is governed by statute, local law, or ordinance or, where not provided by one of those sources, through administrative mandamus. *See Mayor & City Council of Balt. v. ProVen Mgmt., Inc.*, 472 Md. 642, 666, 669-70, 669 n.9 (2021). Instead, whether an administrative remedy is exclusive, primary, or concurrent affects (1) whether a judicial remedy that is independent of and alternate to the administrative remedy may be pursued, and (2) if so, when it may be pursued.

or primary, a party may not bypass the special statutory remedy by bringing an action for a declaratory judgment or for equitable relief." *Furnitureland S., Inc. v. Comptroller*, 364 Md. 126, 133 (2001).

One limited exception to the requirement of exhaustion of administrative remedies is the so-called constitutional exception, which we discuss below in more detail. In essence, the constitutional exception "permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority . . . of the legislative body to adopt the legislation from which relief is sought." *County Council of Prince George's County v. Chaney Enters. Ltd. P'ship*, 454 Md. 514, 538 (2017) (quoting *Harbor Island Marina, Inc. v. Bd. of County Comm'rs of Calvert County*, 286 Md. 303, 308 (1979)). However, the constitutional exception is "extremely narrow," and is subject to several specific limitations. *See Prince George's County v. Ray's Used Cars*, 398 Md. 632, 650-54 (2007). One such limitation, which is dispositive here, is that it does not apply when an administrative remedy is exclusive, as opposed to primary. *Id.* at 650. Notably, this Court has long held that many administrative agencies in Maryland, including the Tax Court, are "fully competent to resolve issues of constitutionality and the validity of statutes," *Furnitureland S., Inc.*, 364 Md. at 137-38 (quoting *Montgomery County v. Broad. Equities, Inc.*, 360 Md. 438, 451 n.8 (2000)), and, therefore, that "[t]he presence of constitutional issues does not authorize a party to circumvent the statutorily prescribed administrative remedies." *Furnitureland S., Inc.*, 364 Md. at 138.

8

**B.** *Administrative Exhaustion of Tax Claims*

Our prior opinions have "consistently treated the special statutory administrative remedies for the determination of tax questions to be exclusive or primary." *Id.* at 134. In examining whether the General Assembly intended those remedies to be exclusive or primary here, we begin with the comprehensive nature of the remedies.

The Comptroller is charged with administering certain enumerated taxes, including the digital advertising tax. Tax-Gen. § 2-102(a)(3). An aggrieved taxpayer has two available administrative paths to challenge a tax administered by the Comptroller: (1) a post-deprivation remedy path, in which the taxpayer pays the tax and then seeks a refund, *see id.* §§ 13-901, 13-902, 13-904, 13-508, 13-510; or (2) a pre-deprivation remedy path, in which the taxpayer declines to pay the tax, awaits an assessment, and then appeals the assessment, *see id.* §§ 13-401, 13-402, 13-508, 13-510.

The post-deprivation remedy path permits a taxpayer to pay a disputed tax and then seek a refund. *See id.* § 13-901(a). As applicable here, a refund claim may be filed with the Comptroller in two scenarios: (1) where the taxpayer erroneously pays "a greater amount of tax . . . than is properly and legally payable;" or (2) where the taxpayer "pays to the State a tax . . . that is erroneously, illegally, or wrongfully assessed or collected in any manner[.]" *Id.* A claim for a refund must be made under oath in the form provided by the Comptroller, supported with proper documentation, *id.* § 13-902, and filed within the time required by statute (three years from the date of payment in most scenarios, including for refunds under the digital advertising tax), *id.* §§ 13-903; 13-1104. If a taxpayer pursues a

9

post-deprivation remedy, the Comptroller will "(1) investigate each claim for refund; and (2) conduct a hearing at the request of the claimant prior to a final determination on the claim." *Id.* § 13-904(a). The Comptroller will then issue a notice of "the determination of the claim for refund." *Id.* § 13-904(b). If the taxpayer disagrees with the Comptroller's determination, the taxpayer can appeal to the Tax Court within 30 days after the notice of the determination is mailed. *Id.* § 13-510(a)(6). If the Comptroller does not issue a determination within six months after the taxpayer filed the claim, the taxpayer may consider the claim disallowed and appeal to the Tax Court. *Id.* §13-510(b).

The pre-deprivation remedy path permits a taxpayer to challenge a tax that has been assessed against it without first paying the tax. *Id.* § 13-401. If the Comptroller, upon examining or auditing a tax return, determines that a taxpayer's "tax due exceeds the amount shown on the return, the tax collector shall assess the deficiency." *Id.* § 13-401(a). A taxpayer may contest such a final assessment by filing an appeal with the Tax Court within 30 days after the notice of assessment is mailed. *Id.* § 13-510(a)(1).

As noted, whether following the post-deprivation remedy path or the pre-deprivation remedy path, a taxpayer's right of appeal from a final determination or a final assessment of the Comptroller is to the Maryland Tax Court. The Tax Court is not part of the judicial branch but "is an adjudicatory administrative agency in the executive branch of state government." *Comptroller v. FC-GEN Operations Invs. LLC*, 482 Md. 343, 358 (2022) (quoting *Comptroller v. Wynne*, 431 Md. 147, 160 (2013), *aff'd*, 575 U.S. 542 (2015)). Proceedings on appeal to the Tax Court are thus a continuation of a taxpayer's

administrative remedies, not judicial review, and are governed by Part IV of Subtitle 5 of Title 13 of the Tax-General Article.  Sections 13-514 through 13-527 provide rules governing proceedings in the Tax Court, including:  (1) prohibiting taking an appeal to the Tax Court "[u]nless a person has exhausted all available administrative remedies before the appropriate tax determining agency," Tax-Gen. § 13-514; (2) requiring the appealing party to file a petition with certain elements and the opposing party to file a response, *Id.* § 13-516; (3) permitting the Tax Court to allow or require the filing of briefs, memoranda, and amendments to pleadings, *id.* §§ 13-517, 13-518; (4) requiring the Tax Court to "hear and determine appeals promptly," *id.* § 13-519; (5) authorizing the Tax Court to issue subpoenas for witnesses and documents and providing a mechanism for enforcement through a circuit court, *id.* §§ 13-520, 13-522; (6) authorizing depositions, *id.* § 13-521; (7) providing that appeals are to be considered without deference and in the manner of a bench trial, although not bound by "the technical rules of evidence," *id.* §§ 13-523, 13-524; (8) permitting the Tax Court to address questions of law submitted to it and to submit "an issue of fact to a circuit court for a jury trial," *id.* §§ 13-525, 13-526; and (9) providing for the recording of proceedings, *id.* § 13-527.

The Tax Court has "full power to hear, try, determine, or remand any matter before it," including the ability to "reassess or reclassify, abate, modify, change or alter any valuation, assessment, classification, tax or final order appealed to" it.  *Id.* § 13-528(a).  In every case it hears, the Tax Court is required to "issue a written order that sets forth its decision."  *Id.* § 13-529(a).  A final order of the Tax Court, which constitutes the final

11

administrative decision in a case, is then "subject to judicial review as provided for contested cases in" the State Administrative Procedure Act.  *Id.* § 13-532(a).

We and the Appellate Court of Maryland have both described the special statutory administrative remedies for resolving tax disputes as "comprehensive."  *See Furnitureland S., Inc.*, 364 Md. at 135; *Holzheid v. Comptroller*, 240 Md. App. 371, 391 (2019) ("The Tax-General Article is . . . comprehensive in nature in that it details specific procedures an aggrieved party must take when seeking relief from an adverse decision of a tax collector[.]").  We agree with the Appellate Court that "the extensive and comprehensive administrative remedies available to taxpayers under the Tax-General Article" constitute persuasive evidence of "the necessity of exhausting those remedies before seeking relief in the circuit court[.]"  *Comptroller v. Zorzit*, 221 Md. App. 274, 293-94 (2015); *see also United Ins. Co.*, 450 Md. at 17 (in the context of determining whether the special statutory administrative remedy at issue was primary or concurrent, identifying "the comprehensiveness of the administrative remedy in addressing an aggrieved party's claim" as a relevant factor).

### C.    *Other Manifestations of Legislative Intent*

The comprehensive nature of the special statutory administrative remedies available for resolving tax disputes suggests that the General Assembly intended them to be either exclusive or primary rather than concurrent, as we have consistently held.  *See Furnitureland S., Inc.*, 364 Md. at 134.  As the Companies point out, however, the statutory scheme does not expressly state that the remedies provided are either exclusive or primary.

12

Nonetheless, two statutory provisions leave us with no doubt as to the legislative intent. *See Monarch Acad.*, 457 Md. at 60 ("Unless the legislature expressly states that the remedy before the agency is exclusive, courts must make this determination."). The first, § 13-505 of the Tax-General Article, broadly prohibits judicial action that would interfere with the assessment or collection of taxes. The second, § 3-409 of the Courts and Judicial Proceedings Article (2020 Repl.), prohibits the use of declaratory judgment actions as an end-run around special statutory administrative remedies. Together, they establish a legislative intent that the special statutory administrative remedies provided for the resolution of tax disputes are exclusive.

Section 13-505 of the Tax-General Article provides: "A court may not issue an injunction, writ of mandamus, or other process against the State or any officer or employee of the State to enjoin or prevent the assessment or collection of a tax under this article." The Comptroller interprets the language of § 13-505 broadly, as an unambiguous expression of legislative intent to preclude judicial intervention in tax cases until a final administrative determination is issued. The Companies interpret that provision more narrowly, precluding only the use of certain remedies, specifically coercive ones, in tax matters. Because a declaratory judgment is not referenced in § 13-505 and is not coercive, the Companies contend that the circuit court had jurisdiction over their complaint seeking a declaratory judgment.

In determining whose interpretation of § 13-505 is correct, we resort to our familiar canons of statutory interpretation. As we set forth earlier this term:

13

"Our goal is to ascertain and effectuate the intention of the legislature and we begin that exercise by reviewing the statutory language itself." [*Comptroller v.*] *Citicorp*[ *Int'l Commc'ns, Inc.*], 389 Md. 156, 165 [2005] (quotations omitted).  We read the plain meaning of the language of the statute "as a whole, so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Wheeling v. Selene Fin. LP*, 473 Md. 356, 376 (2021) (quoting *Koste v. Town of Oxford*, 431 Md. 14, 25-26 (2013) (internal quotations omitted)).  "Additionally, we neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." *Wheeling*, 473 Md. at 376-77 (quoting *Lockshin v. Semsker*, 412 Md. 257, 274 (2010)) (cleaned up).  "If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resorting to other rules of construction." *Id.* at 377 (quoting *Lockshin*, 412 Md. at 275).  That said, as the Court recently reiterated in *Wheeling*,

> [w]e, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone.  Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute.  We presume that the Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

> Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process.  In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

> In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense.

473 Md. at 377 (quoting *Lockshin*, 412 Md. at 275-76) (internal quotations omitted).

Additionally, because we are tasked with interpreting a tax statute, "this Court recognizes that any ambiguity within the statutory language must be interpreted in favor of the taxpayer." *Citicorp*, 389 Md. at 165 (quoting *Supervisor of Assessments of Anne Arundel County v. Hartge Yacht Yard, Inc.*, 379 Md. 452, 461 (2004) (quoting *Comptroller v. Clyde's of Chevy Chase, Inc.*, 377 Md. 471, 484 (2003))).

*FC-GEN*, 482 Md. at 379-81.

Turning to the plain language of the statute, § 13-505 is a limitation on the power of "[a] court" to take certain actions "against the State or any officer or employee of the State." Tax-Gen. § 13-505. The prohibited actions are the issuance of "an injunction, writ of mandamus, or other process . . . to enjoin or prevent the assessment or collection of a tax under this article." *Id.* Here, there is no dispute over the "who" elements of § 13-505: the relevant court is the Circuit Court for Anne Arundel County and the relevant State actor is the Comptroller. Instead, the dispute centers on the "what" elements, and specifically whether the circuit court was prohibited by § 13-505 from: (1) issuing an order granting the Companies' motion for summary judgment against the Comptroller; and (2) issuing a declaratory judgment that the "Maryland Digital Advertising Gross Revenues Tax violates the Supremacy Clause of the United States Constitution and the Internet Tax Freedom Act . . . , the dormant Commerce Clause of the United States Constitution . . . , and the First Amendment to the United States Constitution[.]" As those orders were neither injunctions nor writs of mandamus, the resolution of the dispute turns on whether those orders

constitute "other process . . . to enjoin or prevent the assessment or collection" of the digital advertising gross revenues tax.  Tax-Gen. § 13-505.

We begin with the meaning of "process."  The statute does not define the term.  As defined in our Rules, "process" "means any written order issued by a court to secure compliance with its commands or to require action by any person and includes a summons, subpoena, an order of publication, a commission or other writ."  Rule 1-202(x).  *Black's Law Dictionary* defines it to include "[a] summons or writ, esp. to appear or respond in court."  *Process*, *Black's Law Dictionary* 1458 (11th ed. 2019).  At the time the predecessor to § 13-505 was enacted, "process" in the legal context included, among other definitions, "any writ, order, notice, summons, or other writing by which a court exercises its jurisdiction over the parties or subject matter of any action or proceeding."  *Process*, *Webster's New Int'l Dictionary of the English Language* 1972 (2d ed. 1934); *see also Process*, *Black's Law Dictionary* 1432-33 (3d ed. 1933) (defining "process" to include "[a] writ, summons, or order issued in a judicial proceeding to acquire jurisdiction of a person or [that person's] property, to expedite the cause or enforce the judgment," and "all other writs which may be issued during the progress of an action").  From these definitions, the Comptroller emphasizes that "process" can include "any order," while the Companies emphasize the link in some of the definitions to coercion.  Finding some merit in both arguments, we do not view the dictionary definitions as dispositive.

The Companies also point to our canon of statutory interpretation requiring that we read terms in the context in which they are used.  They then look to the doctrine of *ejusdem*

*generis*[6] in arguing that we must construe "other process" consistent with the two more specific terms that precede it—"injunction" and "writ of mandamus"—and conclude that "other process" must also refer to only "coercive remedies" that "command[] or restrict[] some action."

Although we agree with the Companies that the context in which "other process" is used sheds light on the General Assembly's intent, we find the most critical context to be the General Assembly's statement of the purpose for which process may not be used: "to enjoin or prevent the assessment or collection of a tax under this article." Tax-Gen. § 13-505. If not for that final phrase, the Companies' reliance on *ejusdem generis* would be more persuasive. But we need not look to the terms "injunction" or "writ of mandamus" for insight into what the General Assembly was trying to prohibit by invoking "other process," because the General Assembly has told us directly: court action that will enjoin or prevent tax assessment or collection.

With that understanding, a declaratory judgment that declares a tax unlawful, including the one sought by the Companies and entered by the circuit court here, necessarily runs afoul of § 13-505. Although the Companies protest that the purpose of a declaratory judgment is not to "prevent the assessment or collection" of a tax, but merely

---

[6] As we stated in *Elsberry v. Stanley Martin Cos.*, 482 Md. 159, 189 n.8 (2022):

*Ejusdem generis* is Latin for "of the same kind or class[.]" *Ejusdem Generis*, *Black's Law Dictionary* (11th ed. 2019). It is "[a] canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed." *Id.*

to afford a defense if the Comptroller initiates legal action against them, we see no daylight between those scenarios when it comes to compliance with the purpose underlying § 13-505.  Indeed, we cannot conceive of any purpose for the Companies' lawsuit or the court's declaration other than to (1) prevent the Comptroller from assessing the digital advertising tax against them as an initial matter or (2) ultimately prevent the Comptroller from collecting that tax through eventual legal action.  *See, e.g.*, *Prevent*, *Black's Law Dictionary* 1439 (11th ed. 2019) (defining "prevent" as to "stop from happening; to hinder or impede"); *Prevent*, *Merriam-Webster* 984 (11th ed. 2014) (defining "prevent" as "to keep from happening or existing"; "to hold or keep back"; "to deprive of power or hope of acting or succeeding"; "to interpose an obstacle"); *see also* Cts. & Jud. Proc. § 3-412(a) ("Further relief based on a declaratory judgment or decree may be granted if necessary or proper.").[7]

---

[7] We find the plain language of the current version of § 13-505 to be unambiguous. The statutory history of that provision provides yet further support for our interpretation. The predecessor to § 13-505, which was first adopted in 1947, initially applied only to the State's sales-and-use tax.  *See* 1947 Md. Laws ch. 281, § 286; *see id.* § 260; *id.* ch. 681, § 309.  That statute provided:

> No injunction or writ of mandamus or other legal or equitable process shall issue in any suit, action or proceeding in any court against this State or any officer or employee thereof to prevent or enjoin the collection under this subtitle of any tax sought to be collected, and no suit or proceeding shall be maintained in any court by any taxpayer for the recovery of any amount of taxes alleged to have been erroneously or illegally assessed or collected except as is provided by §§ 351 [providing for administrative remedy] and 352 [providing for judicial review of the Comptroller's final determination under § 351] of this subtitle.

Md. Code Ann., art. 81 § 350 (1957).  The predecessor provision thus expressly applied to "other legal or equitable process," and "in any suit, action or proceeding in any court."  *Id.*

18

Stated another way, the Companies' attempts to carve declaratory judgment suits out of the scope of § 13-505 run head-long into one of our core canons of statutory construction, which is that "[i]n every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." *See FC-GEN*, 482 Md. at 380 (quoting *Wheeling*, 473 Md. at 377).   The Companies' protestations that a declaratory judgment cannot prevent the assessment or collection of a tax because it "stands by itself[,] and does not involve executory process or coercive relief," (quoting *Davis v. State*, 183 Md. 385, 389 (1944)) (emphasis omitted), simply cannot be squared with logic or common sense.   The *only* reason for the Companies to seek a declaratory judgment from the circuit court is the expectation that such a judgment would prevent the Comptroller from assessing or collecting the digital advertising tax from them. Indeed, a declaratory judgment may be granted only if "it will serve to terminate the uncertainty or controversy giving rise to the proceeding[.]"  Cts. & Jud. Proc. § 3-409(a).

---

It also expressly cross-referenced statutory provisions providing for administrative remedies and judicial review of administrative determinations.  *Id.*

Two 1988 legislative changes led to the current version of § 13-505.  First, as part of the State's ongoing recodification process, the General Assembly established the Tax-General Article.  1988 Md. Laws ch. 2.  According to a Revisor's Note, any linguistic change made to what then became § 13-505 was meant to be "new language derived without substantive change."  1988 Md. Laws ch. 2, § 1, at 517 Revisor's Note.

Second, Chapter 569 of the 1988 Laws of Maryland made two substantive changes to the new § 13-505 that had been proposed during the revision process:  (1) adding "assessment or" before "collection" in the statute; and (2) expanding the reach of the statute from the sales-and-use tax to any "tax under this Article."  Thus, the only substantive changes made in the adoption of § 13-505 were intended to broaden its scope when compared to its already broadly worded predecessor.

19

For that reason, the Companies asserted in their complaint that the declaratory judgment they sought would "terminate" an "actual controversy exist[ing] between the [Companies] and the Comptroller."  It is difficult to see how the circuit court's declaratory judgment could terminate the present controversy between the Companies and the Comptroller if it did not have the effect of preventing the collection of the digital advertising gross revenues tax.

A declaratory judgment may be a slightly less effective mechanism to prevent assessment and collection of a tax than an injunction, if only because additional steps would be necessary for the ruling to be directly enforceable.  But would there be any question about the Comptroller's ability to successfully assess or collect the digital advertising tax from the Companies if this Court were to uphold the circuit court's declaratory judgment that the tax is unconstitutional and illegal?  To ask the question is to answer it.  As the Supreme Court of the United States has noted, "there is little practical difference between injunctive and declaratory relief," *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982), and a declaratory judgment "procedure may in every practical sense operate to suspend collection of the state taxes until the litigation is ended[.]"  *Id.* (quoting *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943)).

Ultimately, to allow a declaratory judgment action to be pursued as an exception to the scope of § 13-505 would permit an end-run around the legislative intent to resolve tax disputes through the special statutory administrative remedy process.  We cannot faithfully interpret the broad language and stated purpose of § 13-505 to implicitly leave such a large

20

loophole through the special statutory administrative remedy scheme the General Assembly has established. For the same reason, we reject the Companies' contention that even if declaratory judgment actions are not generally available to resolve tax disputes, they are permissible if they are filed before the tax is due (and so before an administrative remedy claim can be initiated). Such an interpretation would incentivize early court challenges to new or altered tax regimes. Although we express no opinion on the Companies' policy argument for permitting such early court challenges,[8] that is not the scheme the General Assembly has adopted. Like the United States Supreme Court, we are "hard pressed to conclude that" the General Assembly "intended to prohibit taxpayers from seeking one form of anticipatory relief," such as an injunction, "while permitting them to seek another," like a declaratory judgment, "thereby defeating the principal purpose" of the remedial administrative scheme. *Grace Brethren Church*, 457 U.S. at 408.

The plain language of § 13-505 thus evidences the General Assembly's intent to generally preclude courts from interfering with the collection or assessment of taxes. And even if the broad language of the provision could still be interpreted to leave open a window

---

[8] In their brief, the Companies made a public policy argument that "[i]t is far better for taxpayers and the Comptroller to have [a] determination made [by way of a declaratory judgment] *before* the tax is assessed and *before* taxpayers pay millions of dollars in tax only for the State to have to refund those amounts at some later, undetermined time." Whether we agree or disagree with that argument is, for purposes of this case, irrelevant, because the General Assembly has discretion to decide whether to require taxpayers to exhaust their administrative remedies. Nothing in this opinion should be interpreted to suggest that the General Assembly lacks the authority to permit early court challenges to new and innovative tax regimes as a way of minimizing uncertainty and disruption in the event a tax is found to be unconstitutional. All we decide today is that the General Assembly has not done so.

for a declaratory judgment action like the one filed by the Companies here, § 3-409(b) of the Courts and Judicial Proceedings Article shuts it tight.  Section 3-409(b), which is part of the Maryland Uniform Declaratory Judgments Act, states:  "If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."[9]  Cts. & Jud. Proc. § 3-409(b).  "We have, in numerous opinions, taken the position that where the General Assembly enacts an exclusive or primary special form of remedy, no action under the Declaratory Judgments Act may be maintained."  *Laurel Racing Ass'n, Inc. v. Video Lottery Facility Location Comm'n*, 409 Md. 445, 465 (2009) (citing several opinions expressing that position).[10]  We specifically applied that rule in the context of a tax dispute in *Furnitureland South, Inc.*, in which we concluded that the Comptroller could not file an action in court without first exhausting prescribed statutory administrative remedies.  364 Md. at 128.  Citing § 3-409(b), we reaffirmed "that where there exists a special statutory remedy for a specific type of case, and the Legislature intends that remedy to be exclusive or primary, a party

---

[9] The General Assembly enacted the special remedies exclusion to the Declaratory Judgments Act (now codified at Courts and Judicial Proceedings § 3-409(b)) just two years before adopting the precursor to Tax-General § 13-505.  1945 Md. Laws ch. 724, § 1.  Like the current version of the special statutory remedies exclusion, the 1945 version precluded pursuit of a declaratory judgment when "a statute provides a special form of remedy for a specific type of case," and mandated that in such cases the "statutory remedy must be followed."  *Id.*

[10] *See also Ray's Used Cars*, 398 Md. at 647-50; *Sprenger v. Pub. Serv. Comm'n*, 400 Md. 1, 24-25 (2007); *id.* at 33-38 (Eldridge, J., concurring); *Md. Reclamation Assocs., Inc. v. Harford County*, 382 Md. 348, 362 (2004); *Fosler v. Panoramic Design, Ltd.*, 376 Md. 118, 128-29 (2003); *Utilities, Inc. of Md. v. Wash. Suburban Sanitary Comm'n*, 362 Md. 37, 44-45 (2000); *Hartman v. Prince George's County*, 264 Md. 320, 323 (1972).

may not bypass the special statutory remedy by bringing an action for a declaratory judgment or for equitable relief."[11]  *Id.* at 133.

In sum, the comprehensive nature of the special statutory administrative remedies that are provided for the resolution of tax disputes suggests that those remedies must be at least the primary, if not the exclusive, mechanisms for resolving tax disputes.  The combined effect of (1) the general prohibition against judicial remedies that would prevent the assessment or collection of taxes in § 13-505 of the Tax-General Article and (2) the specific prohibition against the use of a declaratory judgment action as an end-run around special statutory administrative remedies in § 3-409(b) of the Courts and Judicial Proceedings Article, make clear the General Assembly's intent that the special statutory administrative remedies for resolution of tax disputes are exclusive.  We so hold.[12]

_____

[11] In their efforts to differentiate declaratory judgments from coercive judicial mechanisms, the Companies rely on Professor Edwin Borchard's 1941 treatise on declaratory judgments, in which the professor states that "[t]he main characteristic of the declaratory judgment . . . is the fact that it conclusively declares the pre-existing rights of the litigants without the appendage of any coercive decree."  (quoting Edwin Borchard, Declaratory Judgments xiii (2d ed. 1941)).  However, as this Court noted more than 80 years ago, Professor Borchard also agreed that the prescription of a special statutory remedy renders a declaratory judgment unavailable:  "[A]s Professor Borchard, who is regarded as an authority on the subject, points out in his work, 'where, however, a special statutory method for the determination of the particular type of case has been provided, it is not proper to permit that issue to be tried by declaration.'"  *Williams v. Tawes*, 179 Md. 224, 229 (1941) (quoting Edwin Borchard, Declaratory Judgments 156 (1st ed. 1934)).

[12] We observe that our holding aligns with the persuasive analysis of the Appellate Court of Maryland in its decision in *Comptroller v. Zorzit*, 221 Md. App. 274, 297 (2015).  There, the intermediate appellate court engaged in a thorough review of the remedial statutory scheme in the Tax-General Article and concluded that "[t]he General Assembly has unambiguously expressed its intent to preclude judicial intervention in tax cases."  *Id.* at 296.  The court observed that interpreting § 13-505 along with Tax-General § 13-514 (requiring exhaustion of administrative remedies with the tax collector before appeal to the

23

**D.     The Constitutional Exception to the Exhaustion Requirement Does Not Apply.**

The Companies invoke the constitutional exception to the administrative exhaustion requirement.   That exception generally "permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority . . . of the legislative body to adopt the legislation from which relief is sought."  *County Council of Prince George's County v. Chaney Enters. Ltd. P'ship*, 454 Md. 514, 538 (2017) (quoting *Harbor Island Marina, Inc. v. Bd. of County Comm'rs of Calvert County*, 286 Md. 303, 308 (1979)).  However, the constitutional exception is "extremely narrow," and is subject to several specific limitations.  *See Prince George's County v. Ray's Used Cars*, 398 Md. 632, 650-54 (2007) (emphasizing that Maryland administrative agencies are competent to address and resolve constitutional challenges; that "this Court has consistently held that exclusive or primary administrative remedies must be pursued and exhausted, before resort to the courts, in cases presenting constitutional issues"; and recognizing several specific limitations on the constitutional exception); *see also, e.g.*, *United Ins. Co. of Am. v. Maryland Ins. Admin.*, 450 Md. 1, 35-36 (2016) (stating that the constitutional exception applies only to challenges that attack a statute as a whole);

---

Tax Court) and Court & Judicial Proceedings § 3-409(b) "demonstrate[s] the Legislature's intent that tax disputes be resolved through the procedures established in Md. Tax-Gen. Code Ann. §§ 13-510 through 13-529."  *Id.* at 297 (quoting *Bancroft Info. Grp., Inc. v. Comptroller*, 91 Md. App. 100, 115 (1992)); *see also Kuypers v. Comptroller*, 173 F. Supp. 2d 393, 396 (D. Md. 2001) (recognizing that the General Assembly has through § 13-505 "expressed its intention that no suit may be brought to interfere with the statutory process for the assessment or collection of a state tax").  We agree.

*Montgomery County v. Broad. Equities, Inc.*, 360 Md. 438, 455-58 (2000) (discussing several limitations on the application of the constitutional exception, including that it applies only to challenges that attack the entirety of a statute, does not apply in the absence of an alternative judicial remedy, does not apply where the "administrative and judicial review remedy" is exclusive, does not apply where there is a need for factual exploration to decide the challenge, and generally applies only where the basis for the constitutional challenge will terminate the entire controversy).

One such limitation, which is dispositive here, is that "where the legislature has expressly provided or intended that the administrative and judicial review remedy be the 'exclusive' remedy," the constitutional exception "is inapplicable, and a declaratory judgment or equitable action challenging the validity of an enactment 'as a whole' will not lie." *Ray's Used Cars*, 398 Md. at 653 (quoting *Broad. Equities, Inc.*, 360 Md. at 457). Here, because we have decided that the applicable special statutory administrative remedies are exclusive with respect to the Companies' challenge to the digital advertising gross revenues tax, the constitutional exception is not applicable.

The Companies contend that we have previously applied the constitutional exception in tax cases, citing *Pressman v. State Tax Commission*, 204 Md. 78 (1954), *Oursler v. Tawes*, 178 Md. 471 (1940), and *Jones v. Gordy*, 169 Md. 173 (1935).[13]

---

[13] Our decision in *Pressman* is particularly instructive concerning the type of case in which we have applied the constitutional exception. *See Broad. Equities, Inc.*, 360 Md. at 459 (identifying *Pressman* as "an illustration of the type of case which is most appropriate for resolution by a declaratory judgment under the 'constitutional exception'"). In *Pressman*, we addressed challenges to a statute that reduced the franchise tax on mutual

25

However, all three of the cases on which the Companies rely predate both (1) the 1988 legislative changes that expanded the reach of the predecessor to § 13-505 to all taxes assessed under the Tax-General Article, *see* footnote 7 above, and (2) our articulation of the tripartite framework for categorizing special statutory administrative remedy schemes in *Zappone*. Those cases are not applicable to the existing statutory scheme.

## CONCLUSION[14]

The Companies are challenging the digital advertising gross revenues tax, a tax they acknowledge the law requires them to pay. The Tax-General Article provides special statutory administrative remedies for the Companies to pursue their challenge. Instead of pursuing those remedies, however, the Companies filed a direct challenge by way of a declaratory judgment action in the circuit court. Absent exhaustion of the special statutory administrative remedies provided in the Tax-General Article, the circuit court lacked jurisdiction over the challenge and was required to dismiss it. For that reason, we vacated

---

savings banks situated in Maryland. 204 Md. at 82. However, the challenge in *Pressman*, unlike the Companies' challenge here, "did not involve any of the substantive tax provisions . . . which would be administered by the administrative tax officials and agencies"; instead, "the only challenge to" the enactment "was that the title of the statute was not descriptive of the body of the statute as required by Article III, § 29, of the Maryland Constitution." *Broad. Equities, Inc.*, 360 Md. at 459 (analyzing *Pressman*).

[14] The Court wishes to acknowledge the helpful amicus submissions provided in this case by the Chamber of Commerce of the United States of America, the Maryland Chamber of Commerce, and the Maryland Tech Council; Council on State Taxation; Peter A. Johnson, Ph.D., Association of National Advertisers, American Advertising Federation, Interactive Advertising Bureau, and American Association of Advertising Agencies; Silicon Valley Tax Directors Group, Information Technology Industry Council, TechNet, NCTA, and National Taxpayers Union Foundation; Tax Executives Institute; and Tax Law Professors.

the orders of the Circuit Court for Anne Arundel County and remanded this case to that court with directions to dismiss the action.

In sum, we hold that: (1) with respect to the Companies' challenge to the Digital Advertising Gross Revenues Tax Act, the administrative remedies in the Tax-General Article are exclusive; (2) the Companies were required to exhaust their remedies; and (3) their failure to do so deprived the circuit court of jurisdiction to entertain this declaratory judgment action.