PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-2275

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; NETCHOICE; COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,

    Plaintiffs - Appellants,

  v.

BROOKE E. LIERMAN,

    Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Lydia Kay Griggsby, District Judge. (1:21-cv-00410-LKG)

Argued: September 20, 2023          Decided: January 10, 2024

Before RICHARDSON and HEYTENS, Circuit Judges, and FLOYD, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Senior Judge Floyd wrote the opinion in which Judge Richardson and Judge Heytens joined.

**ARGUED:** Michael B. Kimberly, MCDERMOTT, WILL & EMERY, LLP, Washington, D.C., for Appellants. Julia Doyle Bernhardt, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee. **ON BRIEF:** Tara S. Morrissey, Jennifer B. Dickey, Tyler S. Badgley, UNITED STATES CHAMBER LITIGATION CENTER, Washington, D.C., for Appellant Chamber of Commerce of the United States of

America. Sarah P. Hogarth, Charles Seidell, MCDERMOTT WILL & EMERY LLP, Washington, D.C., for Appellants. Anthony G. Brown, Attorney General, Steven M. Sullivan, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellee.

―――――

FLOYD, Senior Circuit Judge:

The United States Chamber of Commerce and three other trade associations sued in federal court to stop the enforcement of a new state tax in Maryland. Under the challenged law, called the Digital Advertising Gross Revenues Tax Act ("the Act"), large technology companies pay a tax based on gross revenue they earn from digital advertising in the state. By way of example, when Google displays sponsored links on its search results, the Act taxes a percentage of the revenue that Google makes from those advertisements.

The complaint alleged the Act violates the Internet Tax Freedom Act (Count I), the Commerce Clause (Count II), the Due Process Clause (Count III), and the First Amendment (Count IV). The district court dismissed Counts I, II, and III with prejudice as barred by the Tax Injunction Act ("TIA"). The TIA prevents federal courts from enjoining the collection of state taxes when state law provides an adequate remedy. The district court dismissed Count IV without prejudice on mootness grounds after a state trial court declared the Act unconstitutional in a separate proceeding. While this appeal was pending, the Maryland Supreme Court vacated that declaratory judgment.

We affirm the part of the district court's judgment that found Counts I–III barred by the TIA, but we vacate the judgment to the extent it dismissed Counts I–III with prejudice and remand with instructions to enter the dismissal without prejudice. As for Count IV, we vacate the court's judgment and remand for further proceedings.

I.

The Act imposes a tax on businesses that provide digital advertising in Maryland and have at least $100 million in global annual gross revenues. Md. Code Ann., Tax-Gen.

3

§§ 7.5-102, 7.5-103. The tax is imposed on a business's "annual gross revenues derived from digital advertising services in [Maryland]." § 7.5-101(c). The tax is graduated based on the business's aggregate size, but broadcast and news media entities of all sizes are exempt. §§ 7.5-101(e)(2), 7.5-103. Businesses with global annual gross revenues of $100 million to $1 billion are taxed at 2.5%, those with $1 billion to $5 billion are taxed at 5%, those with $5 billion to $15 billion are taxed at 7.5%, and those with more than $15 billion are taxed at 10%. § 7.5-103. The tax proceeds are first used to pay for the administration of the Act, and the remainder are placed in the "Blueprint for Maryland's Future Fund," which supports public education and career readiness programs. §§ 2-4A-01, 2-4A-02. The Act prohibits the taxed companies from passing on the costs of the tax to their advertising customers "by means of a separate fee, surcharge, or line-item." § 7.5-102(c). We refer to this prohibition as the "pass-through provision" in this opinion.

      The Chamber of Commerce of the United States, Internet Association, NetChoice, and Computer & Communications Industry Association (collectively, "Plaintiffs" or "Appellants")[1]—sued Maryland's Comptroller of the Treasury ("Maryland") in the U.S. District Court for the District of Maryland for declaratory and injunctive relief. Count I of their amended complaint alleged that the Act is preempted by the Internet Tax Freedom Act, which prohibits states from imposing "discriminatory taxes on electronic commerce."[2] Counts II and III alleged that the tax violates the dormant Commerce Clause and Due Process Clause because it "punishes" extraterritorial conduct. Count IV alleged that the

---

[1] Internet Association, a plaintiff below, is not participating in this appeal.
[2] 47 U.S.C. § 151 note.

4

pass-through provision, if "interpreted to prohibit companies from including a separate fee, surcharge, or line-item on bills, invoices, receipts, or the like," violates the First Amendment as a content-based regulation of speech. Joint Appendix ("J.A.") 33.

Appellants argue the Act was designed to punish a select group of "massive technology companies" like Amazon, Facebook, and Google. They say the Act is "unusual" and "punitive" in many respects: it is assessed based on gross receipts as opposed to net receipts (unlike corporate income taxes), it exacts "enormous" charges, it targets "exceedingly few" companies, and it is based on "extraterritorial conduct" rather than conduct within Maryland. Because the Act considers all of a company's revenues from inside and outside Maryland and because it applies to gross as opposed to net receipts, even companies that are not turning a profit could be taxed many times more than even their corporate income taxes in Maryland would impose.

Maryland moved to dismiss the complaint as barred by the TIA and for failing to state a claim on the merits. The Plaintiffs cross-moved for summary judgment. The district court ordered supplemental briefing and held a hearing on the applicability of the TIA. The court sided with Maryland as to Counts I–III, which challenged the imposition of the charge, finding they were barred by the TIA. The court did not immediately dismiss Count IV because the TIA only pertains to the "assessment, levy or collection" of state taxes, and Count IV concerned a free speech challenge to the pass-through provision. Maryland argues, however, that Count IV is also barred by the TIA since the constitutional attack on the pass-through provision "is subsidiary to, intertwined with, and entirely contingent upon plaintiffs' challenge to the tax itself." Resp. Br. 31.

5

The district court ordered further supplemental briefing and held hearings related to Count IV.  After the supplemental briefing but before the final hearing, a Maryland trial court (the Circuit Court for Anne Arundel County) declared the Act unconstitutional in a separate challenge brought by subsidiaries of Comcast and Verizon, though it did not address the pass-through provision specifically.  The district court declared Count IV moot because "the intervening decision by the [Maryland] circuit court has vitiated Plaintiffs' 'present need for . . . relief from the federal courts.'"  J.A. 434 (quoting *S-1 v. Spangler*, 832 F.2d 294, 297 (4th Cir. 1987)).  In its final judgment, the court summarized that it dismissed Counts I–III "*with prejudice* for lack of subject matter jurisdiction" and Count IV "*without prejudice* for lack of subject matter jurisdiction."  J.A. 438 (emphasis added).  It did not explain why it entered the dismissal of Counts I–III with prejudice.

Plaintiffs appealed to this Court.  After full briefing and while this appeal was pending, the Maryland Supreme Court issued a decision vacating the state trial court's declaratory judgment.  The Maryland high court held that the lower court had no jurisdiction to entertain Comcast and Verizon's declaratory judgment action because the companies had failed to exhaust administrative remedies.  Appellants argue that the ruling confirms this case is not moot and "highlights the need for expeditious resolution of the First Amendment issue" due to the present lack of declaratory relief.  Appellants' Suppl. Authorities Letter 1, ECF No. 50.  Maryland counters that the decision has no direct impact on this appeal because, in its view, Count IV was both barred by the TIA and prudentially moot.  Appellee's Suppl. Authorities Resp. Letter 1–2, ECF No. 51.

6

II.

We begin with the dismissal of Counts I–III for lack of subject matter jurisdiction on TIA grounds. We review the dismissal de novo. *See GenOn Mid-Atlantic v. Montgomery County*, 650 F.3d 1021, 1023 (4th Cir. 2011). We hold that Counts I–III were correctly dismissed as barred by the TIA, but the dismissal should have been entered "without prejudice" since it was based on a jurisdictional defect.

The TIA provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The Act applies to claims for both declaratory and injunctive relief. *California v. Grace Brethren Church*, 457 U.S. 393, 408 (1982). Just because state lawmakers call something a "tax" does not mean that it falls under the TIA's ambit necessarily. The TIA does not prevent federal courts from considering, for instance, a challenge to a purported state "tax" that is in reality a punitive fee. *GenOn*, 650 F.3d at 1023.

When determining whether a particular charge is a "fee" or a "tax" for purposes of the TIA, "we do not focus on the superficial 'nomenclature provided to the charge at issue.'" *Id.* (quoting *Valero Terrestrial Corp. v. Caffrey*, 205 F.3d 130, 134 (4th Cir. 2000)). Instead, we ask whether the charge is levied primarily "for revenue raising purposes, making it a 'tax,'" or "for regulatory or punitive purposes, making it a 'fee.'" *Valero*, 205 F.3d at 134. This Court considers three factors in making that determination: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Id.*

7

Maryland argues that this three-part test established in *Valero* conflicts with recent Supreme Court cases but asserts, in the alternative, that the Act satisfies *Valero* if the test remains good law. In the state's view, rather than the three-part test from *Valero*, a charge may *only* be considered a penalty, and thus falls outside the TIA, if one of two conditions is met: either (1) Congress has described the imposition as a "penalty" and not a "tax" or (2) the charge is imposed as a sanction for "the violation of another law that independently prohibits or commands an action." Resp. Br. 15 (quoting *N.F.I.B. v. Sebelius*, 567 U.S. 519, 564 (2012) and *CIC Servs., LLC v. I.R.S.*, 141 S. Ct. 1582 (2021)).

Maryland is mistaken. To start, none of the cases it cites involved the tax-versus-fee distinction under the TIA. *CIC Services*, for instance, concerned the Anti-Injunction Act ("AIA"). The AIA, like the TIA, bars suits for "the purpose of restraining the assessment or collection of any tax" but, unlike the TIA, applies to federal taxes. 26 U.S.C. § 7421(a). The Supreme Court explained that the AIA "draws no distinction between regulatory and revenue-raising tax rules" and simply "applies whenever a suit calls for enjoining the IRS's assessment and collection of taxes—of whatever kind." *CIC Services*, 141 S. Ct. at 1594. That statement, according to Maryland, is "incompatible" with *Valero* and other Fourth Circuit cases that emphasize the revenue-raising versus regulatory purpose distinction in deciding whether a charge falls outside the TIA. *Valero*, for instance, explained: "[T]he general inquiry is to assess whether the charge is for revenue raising purposes, making it a 'tax,' or for regulatory or punitive purposes, making it a 'fee.'" 205 F.3d at 134.

It is true that some of *Valero*'s and *GenOn*'s language concerning the third factor—

8

whether the purpose of a charge is to raise revenue versus regulate conduct—has less force today.[3]  But the multifactor test described in *Valero* and *GenOn* has not been abrogated wholesale.  That is so for at least two reasons.  First, the cases that collapsed the revenue-versus-regulatory distinction concerned other statutes, not the TIA.  The Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000); *see also Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).  Second, the difference between the TIA and AIA matters.  Although the two statutes are very similar, the AIA pertains to federal taxes, while the TIA pertains to state taxes.  *See Direct Marketing Ass'n v. Brohl*, 575 U.S. 1, 8 (2015).  When Congress uses the term "tax," courts interpret that to mean a congressional intent to bar review under the AIA; when Congress states something as a "fee" or "penalty," that indicates an intent to permit pre-enforcement judicial review. *N.F.I.B.*, 567 U.S. at 544.  There is no similar line of cases holding that terms and labels used by state legislatures should be given the same kind of interpretive force under the TIA.

Thus, the three-factor framework of *Valero* remains good law.  Again, using that framework, we consider: "(1) what entity imposes the charge; (2) what population is subject to the charge; and (3) what purposes are served by the use of the monies obtained by the charge." *Valero*, 205 F.3d at 134.  A charge is more likely a fee than a tax when an

---

[3] *See, e.g.*, *N.F.I.B.*, 567 U.S. at 567 ("Every tax is in some measure regulatory."); *id.* at 573 ("[M]ore recently we have declined to closely examine the regulatory motive or effect of revenue-raising measures.").

9

administrative agency imposes the charge, when a very small population of regulated persons or entities is subject to the charge, and when it is placed in a "special fund to defray the agency's regulation-related expenses." *Id.* The test as applied here confirms that the Act imposes a tax and not a punitive fee.

First, the entity that imposed the charge was the Maryland General Assembly, not a regulatory agency. The state's Comptroller, as assessor and collector of taxes, administers collection of the money. *Collins Holding Corp. v. Jasper County*, 123 F.3d 797, 800 (4th Cir. 1997) (charge more likely to be tax when imposed directly by legislature and administered by general tax assessor).

Second, while the population subject to the charge is certainly not universal—the precise number is unclear from the record—the Chamber of Commerce averred in its amended complaint that "[m]any" of its members would be liable to pay the tax. J.A. 16. In *GenOn*, this second factor mattered because only a single entity had to pay the exaction. 650 F.3d at 1024. But the tax here more closely resembles that of *Club Association v. Wise*, 293 F.3d 723, 726 (4th Cir. 2002) (per curiam), when West Virginia imposed a tax on those seeking a license to operate a gambling machine. The TIA barred the federal suit challenging the West Virginia Limited Video Lottery Act even though the population subject to the charge was relatively small. Because the Act here subjects "many" companies to the charge, this factor too supports viewing it as a tax rather than a fee.

Third and finally, the purpose and use of the monies collected will go to educational improvements as part of the "Blueprint for Maryland's Future." True, that is not a mere siphoning into the state's general fund, but the revenue will benefit the population at large

10

by giving every public school district in Maryland additional funding. This satisfies the third and "most important" factor since the money will not be spent to "defray" an "agency's regulation-related expenses." *Valero*, 205 F.3d at 134; *see also id.* at 135 ("Moreover, the fact that revenue is placed in a special fund is not enough reason on its own to warrant characterizing a charge as a 'fee.'").

Although the district court properly dismissed Counts I–III as prohibited by the TIA, it erred in entering the judgment of dismissal "with prejudice." Because the TIA bar constituted a jurisdictional defect, the dismissal should have been "without prejudice" so that the Plaintiffs could challenge the tax in the appropriate forum (the state's administrative agencies and courts). *See S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (explaining that dismissals for any defect in subject matter jurisdiction must be without prejudice "because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits"). On remand, the district court should correct the entry of judgment to be a dismissal of Counts I–III without prejudice.

### III.

We now turn to Count IV, which attacks the pass-through provision on free speech grounds. As an initial matter, Maryland argues that the TIA also bars Count IV and that the district court erred in concluding otherwise. Maryland contends that Count IV's challenge to the pass-through provision is "subsidiary to, intertwined with, and entirely contingent upon" Appellants' challenge to the tax itself. Resp. Br. 31. We disagree. The pass-through provision merely targets the manner and means by which the taxed companies

11

pay for the tax. As explained below, whether that targeted activity is best understood as speech or conduct should be considered by the district court in the first instance. But regardless of how the provision is conceived, it has no bearing on the validity of the underlying tax. *See BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 501–03 (6th Cir. 2008) (holding that TIA did not bar challenge to Kentucky pass-through provision that prohibited taxed companies from "collect[ing] the tax directly" from consumers and from "separately stat[ing] the tax on the bill"). If a court were to side with Appellants and declare the pass-through provision unlawful, that judgment would have no effect on the "assessment, levy or collection" of the tax. The district court correctly concluded the TIA presented no bar to Count IV.

The district court allowed the challenge in Count IV to proceed but later dismissed it as moot after the state trial court declared the Act unconstitutional. The parties disagree as to whether the dismissal of Count IV should be reviewed de novo or for abuse of discretion. Appellants say it should be reviewed de novo as a question of law since mootness, like the TIA, implicates a federal court's subject matter jurisdiction. Maryland contends it should be reviewed for abuse of discretion since the court made a "prudential mootness" ruling by declining to exercise jurisdiction with respect to a claim for declaratory and injunctive relief while a parallel action was pending in state court.[4] The

---

[4] Prudential mootness "is a matter of discretion, focusing on injunctive and declaratory relief" and asks whether there is "an adequate basis for injunctive relief, a purpose to be served by a specific remedy." 13B Wright & Miller, *Federal Practice and Procedure* § 3533.1 n.33 (3d ed. 2022). A decision on prudential mootness is reviewed for abuse of discretion. *Id.*

12

district court did not specify whether its mootness ruling was based on constitutional or prudential grounds, and it used both to support its reasoning. But because the district court's final judgment entered the dismissal of Count IV "without prejudice for lack of subject matter jurisdiction," J.A. 438, we review the dismissal de novo. *See Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017).

Count IV alleges that the pass-through provision violates the First Amendment as a regulation of political speech or as an improper restriction on commercial speech. To reach this conclusion, Appellants first note that the parties jointly stipulated that the law "does not prohibit" taxpayers from "indirectly passing on the cost of the tax . . . by factoring such cost into its customer pricing." J.A. 178. The stipulation continued: "The cost of the tax is passed on directly," and therefore violates § 7.5-102(c), "only when it is imposed on the customer by means of a 'separate fee, surcharge, or line-item.'" J.A. 178. Appellants argue that companies may thus charge their customers more to account for the increased tax burden but may not explain to their customers why their bills have suddenly increased by using a line-item notation. Maryland counters with a host of arguments that the Act regulates conduct, not speech.[5]

The state court decision on which the district court found Count IV moot did not address the pass-through provision. The Maryland trial court instead held that the Act violates the Supremacy Clause, Internet Tax Freedom Act, dormant Commerce Clause, and

---

[5] Counsel for Maryland seemed to renege, in part, on the stipulation at oral argument. *See* 31:10–37:25. This confusion weighs in favor of a remand for further consideration by the district court.

13

First Amendment.[6] *Comcast of Calif., LLC v. Comptroller of the Treasury of Maryland*, No. C-02-CV-21-000509, 2022 WL 20359237 (Md. Cir. Ct. Nov. 17, 2022). But because the state trial court declared the entire Act unlawful, the pass-through provision had no force. The district court reasoned that, without a tax to impose, Plaintiffs had no ability or need "to pass through this tax to their customers, either directly or indirectly." J.A. 434–35. Therefore, the district court concluded, any decision on the constitutionality of the pass-through provision at that juncture "would have no practical effect" and "would also amount to an advisory opinion." J.A. 435.

While this appeal was pending, the Maryland Supreme Court reversed the lower state court declaratory judgment. *Comptroller of Md. v. Comcast of Cal.*, 297 A.3d 1211, 1228 (Md. 2023). The state high court's decision was not based on the merits but instead a jurisdictional defect. The plaintiffs in that case, the Verizon and Comcast subsidiaries, failed to pursue any administrative remedies before bringing their complaint for declaratory relief in state court.[7]

---

[6] The First Amendment issue in the state case did not pertain to the pass-through provision and instead alleged generally that the law singles out particular speakers for differential taxation.

[7] The Maryland Supreme Court explained that the General Assembly created an "exclusive" scheme of administrative remedies by which aggrieved taxpayers may pursue relief pre- or post-deprivation by first filing a claim with the Comptroller and then seeking review in the Maryland Tax Court, which is an adjudicatory administrative agency in the executive branch of state government and not part of the state judiciary. *Comcast*, 297 A.3d at 1219. After receiving a final order from the Tax Court, then and only then may the taxpayer seek judicial review. The state trial court's declaratory judgment was therefore vacated for lack of jurisdiction.

14

The district court dismissed Count IV as moot after the state trial court issued its declaratory judgment but before the Maryland Supreme Court vacated the judgment. The declaratory judgment, however, did not necessarily moot this case because there was an impending appeal which could (and ultimately did) vacate the judgment, making the federal case live again. *See* 13B Wright & Miller, *Federal Practice and Procedure* § 3533.2.1 (3d ed. 2022) ("Action by another tribunal in related proceedings does not always moot a pending action. . . . Mootness may be denied because the decision is subject to reopening or appeal . . . ."). The district court erred in dismissing Count IV as moot and, regardless, Count IV is unquestionably live now that the Maryland Supreme Court has vacated the judgment that had declared the Act unconstitutional.

Appellants insist that we should resolve Count IV on the merits as it presents "an urgent and purely legal issue." Opening Br. 23. We disagree. The district court in the first instance should decide whether the pass-through provision restrains speech and, if so, whether it passes constitutional muster. Because a facial challenge requires proving that "no set of circumstances exists under which the Act would be valid," *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020), those sorts of circumstances are best considered by the district court with the benefit of further fact-finding potentially. *See, e.g.*, *GenOn*, 650 F.3d at 1026 (remanding case and not resolving merits after finding TIA was no bar to district court's jurisdiction); *Freed v. Thomas*, 976 F.3d 729, 732 (6th Cir. 2020) (remanding for consideration of merits after holding that TIA and comity did not bar lawsuit alleging unconstitutional taking under Fifth Amendment). A facial challenge to a statute's constitutionality presents a "high bar[]," and "courts must typically take care 'not

15

to . . . speculate about hypothetical or imaginary cases.'" *Miselis*, 972 F.3d at 530 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). The district court on remand can determine whether the Act is unconstitutional in all circumstances.

IV.

For the foregoing reasons, we AFFIRM in part, VACATE in part, and REMAND. The case is remanded with instructions (1) to enter the dismissal of Counts I–III "without prejudice" and (2) to consider the merits of Count IV's First Amendment challenge.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*